<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
 2                      Civil No. 05-05595(JLL)


 3


 4        - - - - - - - - - - - - - - -X
          MARK VAN,                    :
 5                                     :        TRANSCRIPT OF
                   Plaintiff,          :         PROCEEDINGS
 6                                     :
                   -vs-                :
 7                                     :
          BOROUGH of NORTH HALEDON,    :        December 5, 2008
 8        et al.,                      :
                                       :
 9                 Defendants.         :         Newark, New Jersey
                                       :
10        - - - - - - - - - - - - - - -X


11


12


13        B E F O R E:


14                    THE HONORABLE JOSE L. LINARES,
                    UNITED STATES DISTRICT COURT JUDGE
15


16


17


18


19


20        Pursuant to Section 753 Title 28 United States Code, the
          following transcript is certified to be an accurate record
21        as taken stenographically in the above-entitled proceedings.

          s/Phyllis T. Lewis, CSR, CRR
22        - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                        PHYLLIS T. LEWIS, C.S.R., C.R.R.
23        Official Court Reporter - United States District Court
                    P.O. Box 25588, Newark, New Jersey  07101
24                            (732) 735-4522


25
</pre>

```
 1        A P P E A R A N C E S:

 2            FAUGNO & ASSOCIATES, LLC
              125 State Street (Suite 101)
 3            Hackensack, New Jersey 07601
              (201) 342-1969
 4            BY:  PAUL FAUGNO, ESQ.,
              Attorneys for Plaintiff.

 5
              PODVEY MEANOR
 6            One Riverfront Plaza
              Newark, New Jersey 07102
 7            (973) 623-1000
              BY:  ANTHONY M. RAINONE, ESQ.,
 8            Attorneys for Defendants,
              Sergeant Rowe & all North Haledon defendants.

 9
              RIVKIN RADLER, LLP
10            21 Main Street
              Court Plaza South (West Wing Suite 158)
11            Hackensack, New Jersey 07601
              (201) 489-0495
12            Attorneys for Defendants,
              Detective John Centrillo and the Dumont Police
13            Department.

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    THE COURT:  Are counsel here on the next case?

 2                    MR. FAUGNO:  Yes.

 3                    THE COURT:  Come on up.

 4                    This is in the matter of Mark Van versus the

 5      Borough of North Haledon, a motion brought by one defendant,

 6      specifically Mark Rowe, to dismiss the complaint basically

 7      based on the statute of limitations.

 8                    Counsel, your appearances for the record,

 9      please.

10                    MR. FAUGNO:  Good morning, your Honor.

11                    Paul Faugno from Faugno & Associates on behalf of

12      the plaintiff, Mark Van.

13                    THE COURT:  Okay.  Wait.

14                    Lissette, do we have an appearance sheet?

15                    (Court and Clerk confer.)

16                    I'm sorry.  Go ahead, enter your appearances.

17                    MR. FAUGNO:  Good morning, your Honor.

18                    Paul Faugno from Faugno & Associates on behalf of

19      the plaintiff, Mark Van.

20                    THE COURT:  Okay.

21                    MR. RAINONE:  Good morning, your Honor.

22                    Anthony Rainone, Podvey Meanor, on behalf of

23      the movants, Sergeant Rowe, and I represent all of the North

24      Haledon defendants.

25                    MR. ROBERTELLI:  John Robertelli from the firm of
```

1     Rivkin Radler on behalf of Detective John Centrillo and the

2     Dumont Police Department.

3               THE COURT:  Are you taking any position in this

4     case?

5               MR. ROBERTELLI:  No, your Honor.  I'm merely here

6     to observe.

7               THE COURT:  Okay.

8               Counsel, look, I have read all of the briefs in

9     this matter in detail.  I know that the original complaint

10    in this matter was filed back on November 23rd of 2005.  I

11    know that defendant Rowe was not included in that.  The

12    amended complaint was filed June 6th of '08, right?

13              MR. RAINONE:  Correct.

14              THE COURT:  The incident, which gave rise to all of

15    the allegations, is the visit to the Harrington Park

16    Department with the two police officers, and I believe that

17    took place back on November 24th, '04.

18              MR. RAINONE:  Correct.

19              THE COURT:  If I am in correct on any of this, I am

20    just going by memory here.

21              I also know that the first disclosure statement by

22    the defense, which disclosed at least Rowe's name, were done

23    back on July 14th of '06.

24              Interrogatories were answered subsequently on

25    November 2nd of '06, and depositions took place beginning in

1    March of '07, and more specifically Officer Linari's, I

2    think is his name, deposition took place on August 2nd of

3    2007.  I think those are all facts that may come into play

4    in the arguments today.

5            So with that background, defendant claims that

6    there are two types of claims against defendant Rowe, the

7    1983 actions, which would have a two-year statute of

8    limitations.  I don't think the plaintiff disagrees with the

9    two-year statute on that.

10           MR. FAUGNO:  No, I don't.

11           THE COURT:  And the defamation and slander claims

12   would have a one-year statute, and you would not have a

13   problem with that either?

14           MR. FAUGNO:  That's correct.

15           THE COURT:  Okay.  I will hear from you.

16           MR. RAINONE:  Thank you, judge.

17           THE COURT:  Let's deal with it, so we can

18   streamline the argument, okay?

19           And your name is?

20           MR. RAINONE:  Anthony Rainone, your Honor

21           THE COURT:  Mr. Rainone.

22           MR. RAINONE:  I agree it seems to be a pretty

23   simple issue that's left.

24           THE COURT:  It is.  But let's talk about how would

25   he have known about a claim, a 1983 claim, for this

```
 1        conspiracy to concoct the story, which is his claim, right?

 2        We are only dealing with what his claim is at this point.

 3               How would he have known about that, about Rowe's

 4        involvement in that at the time that he made the disclosure?

 5               What is it about your disclosures that give him

 6        notice of that, other than the fact that it says that he is

 7        the guy with knowledge?

 8               MR. RAINONE:  Actually, Judge, the initial

 9        disclosures say --

10               THE COURT:  Let's look at it.  Which --

11               MR. RAINONE:  This is counsel's declaration within

12        the moving brief, Exhibit D.

13               THE COURT:  Exhibit D?

14               MR. RAINONE:  Yes, the initial disclosure

15        statement.

16               THE COURT:  Exhibit D.  I have it here, and I read

17        it.

18               MR. RAINONE:  It's pretty specific.

19               THE COURT:  It says:  Has knowledge regarding a

20        report made to him about a person identifying himself as

21        Mark Van to the North Haledon Police about an altercation in

22        New York City --

23               MR. RAINONE:  Sorry.

24               THE COURT:  -- so he had knowledge about that.  All

25        the disclosure statement says is that Mark Rowe has
```

1     knowledge about that --

2              MR. RAINONE:  And, your Honor --

3              THE COURT:  -- has knowledge about a report that

4     was made to him.

5              MR. RAINONE:  -- I will explain exactly how this

6     gives plaintiff notice, and why he should have filed this

7     sooner.

8              Plaintiff filed a motion to amend the complaint in

9     the first motion.  This was filed April of 2007 right after

10    he deposed Sergeant Rowe, but before he deposed Sergeant --

11    Officer Centrillo.  Here is the critical fact.  He made a

12    motion to amend to add Centrillo, not Serteant Rowe.

13             Now, he had not deposed Centrillo.  Yet, he claims

14    now that he couldn't in good faith allege a claim against

15    Rowe and Centrillo until he had deposed both of them, and

16    then Linari, who showed up and testified and said, I never

17    said anything.

18             THE COURT:  Wait a minute.

19             But the assumption -- Centrillo is the New York

20    police officer, right?

21             MR. RAINONE:  No.  Linari is the New York police

22    officer.

23             THE COURT:  Centrillo --

24             MR. RAINONE:  Centrillo is Dumont.

25             THE COURT:  Centrillo is Dumont, right?

1     MR. RAINONE:  Yes.

2     THE COURT:  A Dumont officer who supposedly, if all

3  of the facts were true, was told by Linari, right, that Mark

4  Van flashed a badge.

5     MR. RAINONE:  Yes.

6     THE COURT:  Okay.  The plaintiff himself presumably

7  knows that anything that Centrillo said was not true.

8     MR. RAINONE:  That is plaintiff's allegation.

9     THE COURT:  So he would know that.  So once he

10  knows that it was Centrillo that originally made the report,

11  he knew he had a cause of action against Centrillo, right?

12     MR. RAINONE:  At that point, yes, because --

13     THE COURT:  So he moves to bring in Centrillo.

14     MR. RAINONE:  He hadn't deposed Centrillo at that

15  point.

16     THE COURT:  Without deposing Centrillo, the minute

17  he knows that the report was made by Centrillo, he knew

18  Centrillo was lying.

19     MR. RAINONE:  That just is an allegation,

20  absolutely.

21     THE COURT:  So that gives rise to a claim as

22  against Centrillo at that point.

23     MR. RAINONE:  As to Centrillo possibly.

24     THE COURT:  Right.

25     Well, how does it give rise to knowledge of a claim

```
1           as against Rowe at that point?
2                     MR. RAINONE:  I am saying the claim accrued against
3           Rowe at the same time it accrued against the other North
4           Haledon officers.  That is the first issue, Judge.
5                     THE COURT:  Yes, but the statute of limitations,
6           though, is when the plaintiff knew or should have known,
7           right?
8                     MR. RAINONE:  Knew or should have known of facts
9           giving rise to an injury attributable to somebody else.
10                    THE COURT:  Attributable to something done by in
11          this case Rowe.  Let's concentrate on Rowe.
12                    MR. RAINONE:  Okay.  I agree.
13                    The rule is not the specific person.  It is just by
14          somebody else, so the officers go to --
15                    THE COURT:  Yes.  But the someone else who is
16          making the motion for a dismissal based on the statute of
17          limitations here is Rowe, so the question is:  What did he
18          know or should have known about Rowe's actions, that his
19          actions are attributable to his actions --
20                    MR. RAINONE:  Actually, it goes back to December, a
21          few weeks after the incident.
22                    Plaintiff's attorney wrote a letter to the North
23          Haledon Chief of Police.
24                    THE COURT:  Saying I have a cause of action here.
25                    MR. RAINONE:  Right.
```

1          Chief Ferrante wrote back very quickly and said

2     specifically a North Haledon sergeant received a tip.

3          THE COURT:  Right, okay.

4          MR. RAINONE:  That at the very least is when

5     plaintiff was on notice, there is a sergeant involved here,

6     too.

7          THE COURT:  There is a sergeant involved, but

8     involved doesn't mean you have a cause of action.  It is

9     like, for example, you serve me with -- I send you a notice

10    of claim that I am going to make a claim against the

11    University of Medicine & Dentistry for malpractice, okay?

12         MR. RAINONE:  Okay.

13         THE COURT:  And you tell me, and I say what people

14    have knowledge about this.

15         And you say the EMS people have knowledge about

16    this, because they received a call about the injury that

17    brought them to the hospital.  The emergency room physician

18    has, you know, also knowledge on it, and the

19    anesthesiologist and the surgeon all have knowledge, right?

20         Then I file the claim against the anesthesiologist

21    and the surgeon, and I don't sue the EMS people, but I know

22    that they have knowledge, and I know that they exist.  That

23    doesn't give you a right to a claim against them.

24         Subsequently, I find out that the EMS people wrote

25    the wrong report to the surgeon or something.  That is when

1      I know or should know that I have a claim against them,

2      right?

3              The mere fact that Rowe gets a tip, if that is all

4      you know, you don't know that Rowe is involved in any lying

5      or anything.  At that point all you know is that he was the

6      one who supposedly received a tip from somebody.

7              How does that give rise to know or should know that

8      you have a claim against him?

9              MR. RAINONE:  Your Honor, because the whole theory

10     by plaintiff is all of these cops got together and concocted

11     the allegation.  So how could the claim accrue as to some

12     cops back in November of 2004, but not other cops who

13     plaintiff knew or reasonably should have known were

14     involved?

15             I think if I could ask the Court a question,

16     because I think that I may be confused as to the Court's

17     understanding of the accrual, my understanding of the

18     accrual is, it is not that he has to know the specific

19     defendant.  The accrual rule is you know or reasonably

20     should know you have injuries attributable to the actions of

21     others, so --

22             THE COURT:  But you have to know who the others

23     are.  In other words, the statute of limitations is specific

24     to people.  It is not just the actions.  It's not just when

25     the action accrues.  It's when the action accrues, yes.  The

```
 1    action accrues the day they come to see him, I guess, right,
 2    and he gets terminated?
 3              MR. RAINONE:  Yes -- no.  That is much later.
 4              THE COURT:  Well --
 5              MR. RAINONE:  I think this is important, if I
 6    could, Judge.
 7              THE COURT:  Go ahead.
 8              MR. RAINONE:  The claim is simply they are coming,
 9    making up this allegation supposedly and visiting them.
10              Plaintiff is the one who months later told his own
11    chief, Hey, Chief, this cop came to see me.  My cops never
12    went to his employer, never did anything like that, so this
13    claim is literally a claim by one cop saying a couple cops
14    came and asked me questions.  That is the claim.
15              THE COURT:  That will be sorted out in the merits
16    of the case.
17              MR. RAINONE:  I agree, but my understanding is
18    knowing or reasonably should know your injuries attributable
19    to others.
20              THE COURT:  Okay.  When did you say that that
21    happened?
22              MR. RAINONE:  I say that happened at the earliest
23    November 24th --
24              THE COURT:  When the two police officers come to
25    see him?
```

1              MR. RAINONE:  Yes.

2              THE COURT:  All right.

3          At that point who do you suggest the statute of

4      limitations begins to run as to, everybody in the world?

5              MR. RAINONE:  No.  As to any of the North Haledon

6      defendants, who plaintiff alleges engaged in the conspiracy.

7              THE COURT:  That he knew or should have known were

8      engaged in the conspiracy --

9              MR. RAINONE:  Yes, right.

10             THE COURT:  -- right?

11         How could he have known at that time that Sergeant

12     Rowe was engaged in the conspiracy?

13             MR. RAINONE:  Well, that is up to him at that point

14     to exercise due diligence in investigating, and as to

15     Sergeant Rowe, it would be no later than the December letter

16     from Chief Ferrante in identifying a sergeant in the North

17     Haledon Police Department who received the tip.

18         This is not the New York City Police Department,

19     Judge.  This is the North Haledon Police Department.  You

20     are talking about 20 cops.  There is one sergeant in the

21     police department.

22             THE COURT:  All right.

23         So he is told that the North Haledon Police

24     Department received a tip.  That doesn't give him a right to

25     sue them at that point just because he received a tip.

1              MR. RAINONE:  Well, then he filed a notice of claim

2       in February of 2005 arising out of the incident, so even if

3       we skip to February of '05, he still has -- that has to be

4       the accrual date, if plaintiff is filing a notice of claim,

5       he clearly knows or should know of injuries that are

6       attributable to others.

7              THE COURT:  He does know that, but he just doesn't

8       know who all of the others are at that point.

9              MR. RAINONE:  And it's up to him to exercise due

10      diligence at that point --

11             THE COURT:  Where did he not exercise due

12      diligence?

13             MR. RAINONE:  He did not exercise due diligence

14      from the moment he got initial disclosures -- I'm sorry --

15      back to December of '04 when he got a letter from the chief

16      identifying the sergeant, in quotes.  When he got initial

17      disclosures in July of 2006 describing Sergeant Rowe's

18      involvement, when he got interrogatories in September 2006

19      identifying Rowe and Centrillo, when he deposed Rowe, who

20      was the source of the tip.

21             Here is the thing, Judge.  He has alleged that

22      Detective Parenta, Lieutenant Darby, and Chief Ferrante got

23      together and concocted this conspiracy.  Centrillo wasn't in

24      the picture then --

25             THE COURT:  Who?

```
 1                    MR. RAINONE:  Officer Centrillo was from another
 2          police department.
 3                    So if he had a reason to believe these cops
 4          concocted this allegation and then he deposes Sergeant Rowe
 5          and he says to him, I got the tip from this other cop, why
 6          at that point has the claim approved -- we told him Sergeant
 7          Rowe's involvement.  We told him the source of the
 8          information was in July 2006, Judge, and now --
 9                    THE COURT:  When was Sergeant Rowe deposed?
10                    MR. RAINONE:  March of 2007.
11                    THE COURT:  Wait.  March of 2007.
12                    MR. RAINONE:  Yes.  All of the North Haledon --
13                    THE COURT:  Okay.  The complaint was filed in '08.
14                    MR. RAINONE:  But, Judge, my point is this:  That
15          is when the dep was taken.  He noticed these deps long
16          before March of 2007, presumably because in the initial
17          disclosure Sergeant Rowe was identified.
18                    THE COURT:  Suppose he deposed Sergeant Rowe, and
19          he said, I never said anything about getting a tip.
20                    Does he have a cause of action against Sergeant
21          Rowe?
22                    MR. RAINONE:  If Sergeant Rowe said I never got a
23          tip?
24                    THE COURT:  Yes.
25                    Suppose he had said, I don't know what Ferrante is
```

```
1      talking about.  I don't know why they identified me.  I had
2      nothing to do with it.
3              MR. RAINONE:  At that point, no, he wouldn't
4      have --
5              THE COURT:  But the day that he said, I received
6      the tip, then you know he is in the conspiracy, right?
7              MR. RAINONE:  According to plaintiff, but --
8              THE COURT:  How else would he know that he is in
9      the conspiracy up to that point?
10             MR. RAINONE:  Because if he believed there was a
11     conspiracy by three other cops in North Haledon, why on
12     earth didn't he have notice to sue this sergeant who was
13     already identified, Judge?
14             This is -- again, the law in New Jersey is, it is
15     not that he had to know Sergeant Rowe was lying or
16     concocting a conspiracy.  If he had a good faith basis to
17     sue the other three cops, why doesn't he have a good faith
18     basis to sue Sergeant Rowe?
19             This is textbook non due diligence.  He knew about
20     this sergeant forever in this case.
21             The argument about he didn't have a good faith
22     basis to sue him until he deposed him, Centrillo and Officer
23     Darby is a red herring because he tried to sue Centrillo
24     before he got to Centrillo, so I ask the Court to ask
25     plaintiff to explain that, why did he have a basis to file a
```

1    motion --

2            THE COURT:  I intend to ask that.

3            MR. RAINONE:  -- that is my biggest point.

4            THE COURT:  All right.  Let me talk to the

5    plaintiff for a minute.

6            MR. RAINONE:  Thank you, your Honor.

7            THE COURT:  Let me just ask you a question because

8    he hit the nail on the head as to what was bothering me

9    about your claim, even though I was putting him on the spot.

10           What was your basis for believing that there was a

11   conspiracy when you originally filed your complaint on

12   November 23rd of 2005?

13           Who did you file your original complaint against?

14           MR. FAUGNO:  Originally, your Honor, the complaint

15   was filed against Ferrante, Parenta and Darby for this

16   reason --

17           THE COURT:  Now, you thought that they were

18   concocting a story at that point --

19           MR. FAUGNO:  Absolutely.

20           THE COURT:  -- and you had reason to know that?

21           MR. FAUGNO:  Well, my client indicated to me --

22           THE COURT:  That he never was in New York.

23           MR. FAUGNO:  -- that he was never in New York City,

24   and it was a complete fabrication.

25           THE COURT:  Right.

```
 1                    MR. FAUGNO:  Now, this is a very important point,
 2        your Honor.
 3                    Mr. Rainone referred to a letter I received from
 4        the chief after I served my notice of intent to make a
 5        claim.  I don't know if the Court has it in front of it, but
 6        I think we will agree, if the Court looks at that --
 7                    THE COURT:  I want to see it.  If you are going to
 8        talk about it, I want to read it, because I read everything.
 9                    MR. RAINONE:  It's in my reply declaration.
10                    THE COURT:  What exhibit?
11                    MR. RAINONE:  Exhibit B.
12                    THE COURT:  Got it.
13                    MR. RAINONE:  December 17th.
14                    THE COURT:  I got it.
15                    MR. FAUGNO:  Without looking at it, because I am
16        very familiar with what it says, it omits --
17                    THE COURT:  Wait, wait, wait.  Exhibit B is that
18        what you said?
19                    MR. RAINONE:  Exhibit B.  I'm sorry.
20                    THE COURT:  B, as in boy?
21                    MR. RAINONE:  B, as in boy.  That is a reply
22        declaration for the exhibits.
23                    THE COURT:  Okay. Let me just read it.
24                    What he is referring to is a paragraph wherein
25        Chief -- okay.  It is actually an attorney and countersigned
```

```
 1      by Chief Ferrante --
 2                  MR. RAINONE:  I apologize.
 3                  THE COURT:  -- it's from an attorney named Segretto
 4      to Mr. Faugno.
 5                  Is that how you pronounce your name?
 6                  MR. FAUGNO:  Yes.
 7                  THE COURT:  I assume the operative paragraph you
 8      are referring to is in that letter.  The lawyer on behalf of
 9      the Borough of North Haledon Police Department said:  A
10      North Haledon sergeant accepted a phone call regarding
11      Officer Van's conduct.  The information he received
12      regarding the incident was forwarded to the North Haledon
13      bureau, et cetera, right?
14                  MR. RAINONE:  One thing, Judge, if I could clear it
15      up.
16                  That letter is from the chief.  This is just a
17      direction to sending correspondence to James Segretto --
18                  THE COURT:  It doesn't make a difference who it's
19      from, if it's from the lawyer or the chief.  It is from the
20      police department.  So the question is:  Did he get it, did
21      he ask that information.
22                  What difference does it make?
23                  It could have been from a citizen.  The question is
24      that he knew, right?
25                  MR. RAINONE:  Yes.
```

```
1                THE COURT:  He knew that a sergeant had accepted a
2       phone call, the North Haledon sergeant.
3                Okay.  Go ahead.  Address that.
4                MR. FAUGNO:  At that point, all that letter told me
5       is that some sergeant, not identified, and it is interesting
6       when we talk about due diligence with the police department,
7       I am dealing with a police officer who is losing his job,
8       and they don't give me the name of the police officer,
9       number one.  Okay?  All it tells me is that some sergeant
10      received a report.
11               However, your Honor, what this letter does not
12      disclose, and this is one of my big issues in this case, it
13      doesn't mention the name John Centrillo.  Okay?
14               They talk about due diligence --
15               THE COURT:  Wait, wait, wait.
16               At that point you say you knew that this whole
17      thing was concocted because your client knew they were
18      lying, right?
19               MR. FAUGNO:  Well, I knew that the people that went
20      to talk to him and confronted him with the allegations --
21               THE COURT:  Were lying.
22               MR. FAUGNO:  -- I didn't know what it meant about
23      somebody receiving a tip.  Okay?  It doesn't say exactly
24      what the tip was.
25               THE COURT:  Okay.  I agree with you.
```

1              Let's move forward now and talk about the
2    disclosure then.
3              MR. FAUGNO:  Now, the disclosure, your Honor,
4    simply says, it gives me a name now.
5              THE COURT:  It gives you a name, and it says that
6    that name -- let's look at the disclosure -- let me find it.
7              MR. FAUGNO:  Had knowledge regarding the report.
8              THE COURT:  Which exhibit is the disclosure?
9              MR. RAINONE:  That is Exhibit D in the original --
10             THE COURT:  Okay.
11             So the disclosure says, has knowledge regarding the
12   report.
13             Now, you know who is the person who has knowledge
14   regarding the report --
15             MR. FAUGNO:  Yes.
16             THE COURT:  -- made to him.
17             MR. FAUGNO:  Yes.  That is true, but I don't
18   know --
19             THE COURT:  A report made to him.
20             MR. FAUGNO:  Right.
21             But I don't know at that point whether somebody
22   made a report to him or not.  Okay?
23             That is what -- in other words, that is what is
24   being alleged.  But, Judge, what you have to understand is,
25   it doesn't give me the information about who made the report

1    to him.

2           THE COURT:  But it doesn't make a difference

3    because you know there was no such thing.  In your head, you

4    already know that.  You knew that back when they went back

5    to the Harrington Park Department, you knew that this whole

6    thing was a lie.

7           MR. FAUGNO:  But I didn't know where the lies were

8    coming from.  Okay?

9           THE COURT:  But now you know where it is coming

10   from, don't you?

11          MR. FAUGNO:  No, I don't, because it is coming from

12   John Centrillo allegedly, and that is the crucial piece of

13   information.

14          THE COURT:  You are being told in the defendants'

15   disclosure statement, that the following individuals have

16   information, and one of the things they tell you is that

17   Mark Rowe received a report.  If Mark Rowe said that he

18   received a report, that doesn't say that he is lying --

19          MR. FAUGNO:  With respect, it doesn't say he

20   received a report.  It said he had knowledge regarding a

21   report.

22          THE COURT:  Made to him.  Exactly.

23          MR. FAUGNO:  Made to him, correct.

24          THE COURT:  You know that is not true.  He couldn't

25   have possibly received a report.

1          MR. FAUGNO:  I don't know that it is not true that

2     somebody made the report.

3          Somebody could have been lying to him, okay?  And

4     until I found out about the name John Centrillo -- see, at

5     the point of this disclosure, I had no idea who John

6     Centrillo was.  I never heard the name in my life.

7          Even though the police department and even though

8     theoretically the lawyers when they made this disclosure

9     knew who John Centrillo was, were camouflaging his name.  It

10    wasn't disclosed to me.

11         So the first time I find out about Centrillo is

12    when I start taking depositions -- well, actually when I

13    received the Answers to Interrogatories, and now they tell

14    me that Centrillo is the one who reported to Rowe.

15         So I say wait a second, who is this guy Centrillo?

16    He is making a report to Rowe.  You know, what is his

17    involvement, okay?

18         I don't want to just start naming police officers

19    until I have -- you know, I am kind of on a wild goose chase

20    at this point.  I want to find out what is going on here.

21         THE COURT:  Let's see what is told to you in the

22    Answers to Interrogatories.

23         MR. FAUGNO:  Well, it is not so much the Answers to

24    Interrogatories.  It is the documents that came with the

25    Answers to Interrogatories.

1           When I get the Answers to Interrogatories in

2      November of 2006, that is the first time I have become aware

3      when I get documents with the Answers to Interrogatories,

4      that John Centrillo is the individual who told Mark Rowe

5      that he was told by a New York City police officer that this

6      event had occurred in New York.

7           It was the first time I learned, your Honor,

8      November 2006, that Officer Centrillo refused -- that Mark

9      Rowe did not disclose the name of Centrillo, wanted to

10     shield the name of Centrillo because Centrillo wanted to

11     shield the name of Linari.  Okay?

12          And it's when I received that information, I said

13     to myself, there is the conspiracy that --

14          THE COURT:  But you had already sued based on that

15     conspiracy.

16          MR. FAUGNO:  I didn't have the instrumental facts

17     to be able to make a claim against Rowe until I knew that

18     Linari denied that he ever said anything to Centrillo about

19     this.  The New York City cop --

20          THE COURT:  No, no, no.  Wait a minute.  That just

21     adds icing to your case, but that doesn't tell you that

22     that's when you knew all of these people were lying.

23          You knew all of these people were lying because

24     your client knew they were lying, right?  That is your case.

25     It's a lie.  This whole thing is a conspiracy.  I knew about

1      it the day they came to see me at Harrington Park, I knew

2      those two guys were lying --

3          MR. FAUGNO:  Judge, I mean, that sounds good in a

4      vacuum, but in reality when I am dealing with a client, and

5      I have someone saying an officer -- all I know until

6      November 2006 is that some guy named Rowe received a report.

7      Okay?

8          Maybe the report was a fabricated report, but he

9      really did receive it.  Okay?

10         It wasn't until I was able to explore who this guy

11     Centrillo was and go back to the source of where this

12     originally started, where the source says it never happened

13     is when I believe I am really on notice.

14         It is really from a statute of limitations

15     standpoint, we are talking really -- my instrumental facts

16     were November of 2006.  Okay?  And that is when I knew or

17     should have known about the actual involvement of Mr. Rowe.

18         And by the way, Judge, I asked the question --

19         THE COURT:  What is it that happened in November of

20     2006?  That is the Answers to Interrogatories, right?

21         MR. FAUGNO:  Well, the documents,

22         THE COURT:  What do the documents reveal?

23         MR. FAUGNO:  I get the police report that was the

24     only police report generated in this case that reflects that

25     John Centrillo called up Mark Rowe allegedly and said to

```
 1        Mark Rowe, hey, I got a call from New York, and you know, go
 2        speak to your chief because this guy tried to use a North
 3        Haledon badge to explicate himself from an assault that
 4        occurred over in New York City.
 5                 That is the first time that I had those facts, your
 6        Honor. But what's crucial to me --
 7                 THE COURT:  But at that point you know, right --
 8                 MR. FAUGNO:  Yes.
 9                 THE COURT:  -- as of November of '06, you knew that
10        that information was given to Rowe by Centrillo?
11                 MR. FAUGNO:  Correct.
12                 THE COURT:  You knew Centrillo was lying?
13                 MR. FAUGNO:  Yes.
14                 THE COURT:  You knew Rowe was lying?
15                 MR. FAUGNO:  Well, you know, Judge, I can't really
16        say I knew they all were lying until I deposed Linari, when
17        Linari claimed the alleged source of this, that he never
18        told it to anybody -- any police officer --
19                 THE COURT:  You knew they were lying because the
20        basis of your complaint is that this never happened.
21                 MR. FAUGNO:  No, Judge.  Just follow my logic.
22                 It did happen --
23                 THE COURT:  Okay.
24                 MR. FAUGNO:  -- however, who -- where the lie was
25        emanating from, for all I know, somebody in New York had
```

```
1        fabricated a lie.  Okay?
2               If Linari got up and he testified, yeah, I did tell
3        this to all of these people, okay, then I may have had to go
4        in a different direction, but that is not what he said.
5               He said, I didn't tell these people.
6               So now I know somewhere the buck had to stop, all
7        right?  And it is at that point that I know that what
8        Centrillo is saying, by a claims standpoint, what Centrillo
9        is saying and what Rowe is saying can't be true, because --
10              THE COURT:  Isn't your theory that Rowe -- there is
11       some relationship between Rowe and Centrillo, right?
12              MR. FAUGNO:  Yes.
13              THE COURT:  And as a result, Centrillo called
14       Rowe --
15              MR. FAUGNO:  Because they know each other.
16              THE COURT:  -- because they know each other, right?
17              MR. FAUGNO:  Right.
18              THE COURT:  I remember from reading the deposition
19       what happened here was, or what was originally claimed was
20       that Centrillo said I know someone -- Linari had come to
21       him, and he said, I don't want to get involved because I
22       don't want to get in trouble, because I didn't write it up,
23       and I didn't arrest the guy, right?
24              MR. FAUGNO:  Right.
25              THE COURT:  So in order to protect Linari,
```

```
 1     Centrillo said, I'll call somebody.  I have a friend, right?
 2     So he called Rowe.
 3               MR. FAUGNO:  Right.
 4               THE COURT:  That's your theory, right?
 5               MR. FAUGNO:  Yes.
 6               THE COURT:  That is not your theory.  That is what
 7     was originally claimed as happening.
 8               Then he called Rowe.  Rowe then made a report to
 9     Ferrante, and we are off to the races, right?
10               MR. FAUGNO:  Right.
11               THE COURT:  But your theory is now having deposed
12     everybody, that what happened here was that Rowe and
13     Centrillo somehow got together to concoct a story, and it
14     floated all the way down, right, or --
15               MR. FAUGNO:  In essence, yes.
16               THE COURT:  -- or that they all got together.
17               MR. FAUGNO:  My position is they all got together
18     to do it.  That's the theory of my case.  It was a theory
19     very well supported by the facts.
20               Judge, it is only a two-year statute of
21     limitations.  If I was to be a Monday morning quarterback
22     about myself, which I try to be, it is easy in this
23     business, I probably could have filed a complaint six months
24     earlier, eight months earlier, but the reality is I did move
25     to file the complaint within two years of when I became
```

```
 1     aware of the real facts, the only facts.  I didn't even know
 2     what Rowe claimed to have said he received until I received
 3     the police report in November of 2006.  I didn't know what
 4     information he said he received.  All I knew was information
 5     that said he had received a report.
 6              I didn't have details, where did he get the report
 7     from.  If I found out that he got the report from a police
 8     report that was generated out of New York City, I would say,
 9     look, the guy has a New York City police report that says
10     this happened, you know, maybe somebody is messing up over
11     in New York City.
12              But it is the first time I learned that that is not
13     what happened, that this is supposedly, oh, completely
14     incredulous, your Honor, that this guy Centrillo tells Rowe,
15     I want to protect the New York City cop because he doesn't
16     want to get involved.  Well, if he doesn't want to get
17     involved, why would he make the call to begin with?
18              It doesn't make sense, so at that point of November
19     2006, the light goes on, okay, that says, look, all of these
20     guys --
21              THE COURT:  Are lying.
22              MR. FAUGNO:  -- are lying.  That is the most
23     significant thing.  I don't know that Rowe, before November
24     2006, is lying, because I don't know what information he
25     received.  All I know is he got a report --
```

```
 1                    THE COURT:  But as of November 2006, you know that
 2          Rowe was lying, that's your point, and you filed a complaint
 3          in 2008, within two years.
 4                    MR. FAUGNO:  That's correct.
 5                    THE COURT:  When then based on that representation,
 6          your defamation claim goes out the window because that is a
 7          one-year claim, and if you learn in November --
 8                    MR. FAUGNO:  I am going to concede I may have a
 9          problem on the defamation.
10                    THE COURT:  The defamation is out based on your
11          representation.
12                    MR. FAUGNO:  I will concede that.
13                    THE COURT:  All right.
14                    Anything else?
15                    MR. RAINONE:  This November date is not accurate,
16          Judge.
17                    THE COURT:  Why isn't it accurate?
18                    November 2, 2006 interrogatories were served.
19                    MR. RAINONE:  But our documents were served before
20          that in September, and our cover letter is attached to the
21          reply certification --
22                    THE COURT:  What difference does it make?  He filed
23          a complaint June '06 --
24                    MR. RAINONE:  This goes to his due diligence,
25          Judge.
```

PHYLLIS T. LEWIS, CSR, CRR, OFFICIAL COURT REPORTER

```
1              THE COURT:  You think the two months will make a
2     difference in the due diligence argument here?
3              MR. RAINONE:   I believe if the Court agrees with
4     the accrual argument, if it does, then yes, it will make a
5     difference because then we are getting into, well, if the
6     claims accrued in November and December of '04, now
7     plaintiff's only avenue to argue is the discovery rule --
8              THE COURT:  The discovery rule, that is what we are
9     taking about here.
10             MR. RAINONE:  There is absolutely no due diligence
11    here.  When you look at the time line, Judge, you have --
12    just the motion for leave to amend, the second one was filed
13    three years after the approval, 16 months after the initial
14    disclosure was served, almost three years after Ferrante's
15    letter identifying the sergeant, 14 months after service of
16    the police report identifying Rowe and Centrillo, one year
17    after --
18             THE COURT:  All right.
19             MR. RAINONE:  -- eight months after he deposed
20    Sergeant Rowe, seven months after his first motion to amend
21    before he had deposed Centrillo or -- and eight months -- it
22    is just -- Judge, there are a couple of Third circuit cases
23    on point.  This is not due diligence.  He needs to show that
24    in the discovery rule, and it is not present in the record.
25             THE COURT:  Isn't what transpired here that you,
```

1    meaning the police department, is the one who is in the

2    possession of all of the parties that are involved here,

3    right?

4         And when you tell them in your initial disclosure,

5    all you say is some sergeant, right?

6         Well, originally in the letter you say some

7    sergeant.  You don't even give him the name.

8         Subsequently, you wait for the disclosure

9    statements to give the name that Sergeant Rowe has knowledge

10   of some report made to him as opposed to he made a report

11   based on Officer Centrillo.  None of that stuff is told to

12   him, and then subsequent to when he does depositions and

13   interrogatories, that he gets more information.

14        So don't you bear some of the blame here, Counsel?

15        MR. RAINONE:  No, we don't.

16        We identified Sergeant Rowe's knowledge, what he

17   knew, that he --

18        THE COURT:  You didn't tell him that he knew it

19   from Centrillo.

20        MR. RAINONE:  Not in the initial disclosure.

21        MR. FAUGNO:  I want to know why not, Judge.  I'd

22   like to know why not.

23        THE COURT:  Counsel, let's not do that.

24        MR. FAUGNO:  I'm sorry.  I apologize.

25        MR. RAINONE:  We identified Rowe in the initial

```
 1      disclosure.

 2              Within a couple of months after that, he is given

 3      the police report --

 4              THE COURT:  But it is now given to them when,

 5      September --

 6              MR. RAINONE:  September '06.

 7              THE COURT:  Right.

 8              Then he thereafter notices the depositions, right?

 9              MR. RAINONE:  Yes.

10              THE COURT:  And he takes the depositions about

11      three or four months later.

12              MR. RAINONE:  Yes.

13              But if you go back to the accrual, the language

14      from the Third Circuit in O'Chifer versus Fishbein, it is

15      when plaintiff knows or has reason to know of the injury on

16      which the action is based.  Then it is up to him at that

17      point to get up and figure out who.

18              It is not, okay, now I know this.  Now I know --

19              THE COURT:  You are right, the accrual of the cause

20      of action starts when he has heard and he knows that his

21      injuries as a result of somebody else being negligent or in

22      violation of his 1983 rights, or whatever it may be.  That

23      is when the action accrues.

24              But the discovery rule sets up the statute of

25      limitations as to a particular defendant   and begins to run
```

34

```
1     when he knew or should have known of that defendant's
2     participation in your injury, right?
3              MR. RAINONE:  Yes, Judge.
4              THE COURT:  The issue here is:  Could he have known
5     through due diligence two years before June of '08.
6              Did he have reason to know as of June of '06 to due
7     diligence that Rowe was involved in this conspiracy.  That's
8     the issue.
9              MR. RAINONE:  Yes, I would say yes.  He did based
10    on the December '04 letter identifying the sergeant --
11             THE COURT:  A sergeant.
12             MR. RAINONE:  -- a sergeant, yes, in a police
13    department.
14             THE COURT:  Thank you.
15             I disagree with you.  I think that the letter alone
16    does not give you a sufficient basis to know or should have
17    known of Rowe's involvement in this conspiracy.  I think
18    that you are right, that the accrual of the cause of action
19    was at the time that they visited him at the Harrington Park
20    Police Department.  But his reason to know or should know
21    that Rowe was involved did not occur at that time.
22             The first time that he even hears Rowe's name is at
23    the time of the disclosure statement.  The disclosure
24    statement takes place in July of 2006.  Even then, okay, if
25    we were to take the disclosure statement as of July 14th of
```

```
1    '06 as being the operative date, the complaint is filed on
2    June 6th of '08, within the two years.  So therefore, I
3    don't find in this case that this is an appropriate case to
4    dismiss based on the two-year statute of limitations
5    applicable to the 1983 action.
6         So as to defamation, certainly he knew or should
7    have known by then that Rowe was in on this, and therefore
8    lying and therefore defaming him, and the one-year statute
9    of limitations fails, so I am striking that.  I am allowing
10   the other claim, and that is my ruling.  An order will
11   follow in accordance with those rulings.
12        Anything else?
13   MR. FAUGNO:  Thank you very much, Judge.
14   MR. RAINONE:  Just to state there were a couple of
15   state law claims that I presume will survive, infliction of
16   emotional --
17   THE COURT:  Those are two years as well, and they
18   will survive.
19        Thank you very much.
20   MR. FAUGNO:  Thank you.
21   MR. RAINONE:  Thank you, your Honor.
22        (Court adjourned.)
23
24
25
```