Paul Faugno
Faugno & Associates, LLC
125 State Street
Suite 101
Hackensack, NJ 07601
201-342-1969
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                              : Civil Action No.05-5595 (JLL)
MARK VAN                                       :
                                              :
Plaintiff(s),                                  :
                                              :
-vs-                                           :
                                              :
BOROUGH OF NORTH                               :
HALEDON, et al                                 :
                                              :
Defendant(s).                                  :
_____ :

_____

### MEMORANDUM OF LAW IN OPPOSITION

### TO DEFENDANT CENTRILLO'S MOTION FOR SUMMARY JUDGMENT

_____

# TABLE OF CONTENTS

TABLE OF CONTES ……………………………………………………….. i

TABLE OF AUTHORITIES ……………………………………………………. iii

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ...................................................................... 2

LEGAL ARGUMENT............................................................ 3

POINT I

   **THE PLAINTIFF CONCEDES THE ALLEGATIONS CONTAINED IN POINT I OF DEFENDANT'S BRIEF AND WILL NOT BE PROCEEDING AGAINST THE BOROUGH OF DUMONT OF POLICE DEPARTMENT**…………………………………………… 3

POINT II

   **POINT IS CONCEDED**…………………………………. 3

POINT III

   **POINT IS CONCEDED**…………………………………. 3

POINT IV

   **THE CLAIM AGAINST DEFENDANT CENTRILLO IS NOT TIME BARRED**………………………………… 4

POINT V

   **BY THE NATURE OF PLAINTIFF'S CAUSE OF ACTION THE NEW JERSEY TORT CLAIMS NOTICE PROVISIONS ARE  INAPPLICATBLE**……………… 6

POINT VI

**(A)**    **THE DEFENDANT CENTRILLO UTILIZED HIS POSTION AS A POLICE OFFICER TO PARTICIPATE IN A CONSPIRACY TO DEPRIVE PLAINTIFF, MARK VAN ON HIS CIVIL RIGHTS AND WAS ACTING UNDER THE COLOR OF AUTHORITY**……………………………………………….. 8

**(B)**    **THE ACTIONS BY DEFENDANTS INCLUDING CENTRILLO WERE CALCULATED TOWARDS DEPRIVING MR. VAN OF HIS LIBERTY, INTEREST IN PURSUING OCCUPATION OF HIS CHOICE AND LIVELIHOOD**……………………………………… 10

**(C)**    **PLAITNIFF DID PROVIDE SPECIFICITY IN ITS' COMPALINT**…………………………………………… 13


POINT VII

       **THE PLAINTIFF HAS ESTABLISHED ACTS OF HARRASSMENT BY DEFENDANTS INCLUDING CENTRILLO WHICH RISES TO A CAUSE OF ACTION UNDER 42 USC 1983**…………………………15

POINT VIII

       **POINT IS CONCEDED**………………………………… 16

POINT IX

       **POINT IS CONCEDED**………………………………… 17

POINT X

       **THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE PLAINTIFF MEETS THE FIVE PRONG THIS SET FORTH BY DEFENDANT**……………………………… 17

POINT XI

       **DEPENDING UPON THE JURY'S VERDICT PUNITIVE DAMAGES MAY BE AWARDABLE**…….. 18

CONCLUSION.................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                      **Page**

Arnold v. Trumeper, 833 F. Sup. 678, 682……………  15

Barna v. City of Perth Amboy, 42 F. 3rd 809…………   9

City of Sacramento v. Lewis, 523 U.S. 833…………..  13

D.C. Owens v. Feigin, 394 N.J. Super 85…………….  6

Felder v. Casey, 487 U.S. 131…………………………  6

Goldberg v. Weil, 707 F. Sup. 357, 361………………  16

Gunderson v. Schlueter, 904 F. 2d 407,410………….  15

Harris v. City of West Chicago, 2002 U.S. Dist.
Lexis 16579 at Page 10…………………………………  15

Jungels v. Pierce, 825 F. 2nd 1127, 1131
(7th Cir. 1987)…………………………………………  10

Maldonado v. Leeds, 374 N.J. 523 (App. 2005………  4

Meyer v. Nebraska, 262 U.S. 390, 399………………  12

O'Keefe v. Snyder, 83 N.J. 478-498
(Supreme Court 1980)…………………………………  4

Robb v, City of Philadelphia, 733 F. 2nd 286, 294…..  11

Rolax v. Whitman, 175 F. Sup 2nd 720, 72…………..  4

Shands v. City of Kennett,  789 F. Sup. 989, 985……  10

Velez v. Jersey City, 358 N.J. Super  224, 243………  7

Versage v. Twp. Of Clifton, 984 F. 2nd 1359, 1371…..  10

## **PRELIMINARY STATEMENT**

The Plaintiff makes the following response to the preliminary statement provided by defendant Centrillo in their moving brief.   The entire thrust of defendant Centrillo's argument presupposes the veracity  of Centrillo's testimony that it received information from a NY City police officer whom reported an event occurring in New York City involving Mark Van.  Given the fact that material statement of facts establish that John Linari, the police officer identified by John Centrillo denies ever giving this information, there are genuine issues of material fact that need to be determined by a finder of fact  as to veracity of statements of defendant Centrillo.

## **Statement of Facts**

The plaintiff will rely upon the statement of undisputed material facts incorporated herein by reference.

## LEGEL ARGUMENT

### Point I

**THE PLAINTIFF CONCEDES THE ALLEGATIONS CONTAINED IN POINT I OF DEFENDANT'S BRIEF AND WILL NOT BE PROCEEDING AGAINST THE BOROUGH OF DUMONT OF POLICE DEPARTMENT**

The Plaintiff Also Concedes This Point.

### POINT II

The Plaintiff Also Concedes This Point.

### POINT III

The Plaintiff Also Concedes This Point.

<u>POINT IV</u>

**THE CLAIM AGAINST DEFENDANT CENTRILLO IS NOT TIME BARRED**

The defendant is correct that in accord with <u>Rolax v. Whitman</u>, 175 F. Sup 2nd 720, 727 a federal civil rights action accrues when the plaintiff knew or had reason to know of the injury that constituted the cause of. This is commonly referred to as the discovery rule, as a basis to toll the statute of limitations.

Herein, it is abundantly clear that the plaintiff was unaware of the defendant John Centrillo until such time that the Borough of North Haledon defendants provided answers to interrogatories in November of 2006. It was at that time the North Haledon defendants first provided the undated investigative report which revealed the name and scope of involvement of John Centrillo. See Exhibit 15. Further, the inability to get to the bottom of the matter is largely attributable to the actions of Centrillo himself. In particular, John Centrillo according to his own admissions refused to disclose the name of crucial witnesses in particular John Linari during the early stages of the investigation.

In the State of New Jersey, the concealment of information will prevent the running of the statute of limitation. <u>O'Keefe v. Snyder</u>, 83 N.J. 478-498 (Supreme Court 1980). A substantial portion of delay are attributable to the actions of John Centrillo himself. It should be noted that the discovery rule is also applicable to the State Law of New Jersey state cause of action. <u>Maldonado v. Leeds</u>, 374 N.J. 523 (App. 2005). It is certainly clear that the complaint against Centrillo was filed within two years of the plaintiff becoming aware of John Centrillo in the first instance. The identity of John Centrillo and his

involvement occurred no earlier than November of 2006 at the time his name was first disclosed by the Borough of North Haledon defendant.  Thus, all counts of the complaint both in regard to the Federal Civil Rights claim and state causes of action, fell within the applicable two year statute of limitations.

**POINT V**

**BY THE NATURE OF PLAINTIFF'S CAUSE OF ACTION THE
NEW JERSEY TORT CLAIMS NOTICE PROVISIONS ARE
INAPPLICATBLE**

Both Federal law and New Jersey Law establish that notice of claim

requirement do not apply to Federal Civil Rights actions. <u>D.C. Owens v. Feigin</u>,

394 N.J. Super 85. Further the Supreme Court in <u>Felder v. Casey</u>, 487 U.S. 131

reestablished that no state notice of claim provisions should be enforceable in a

1983 action.

Further, defendant Centrillo in another aspect of his application, is

claiming that the defendant Centrillo was not acting under the color of authority in

that his actions were private transactions. Accordingly, this factual issue must be

determined as to whether or not the actions of the defendant Centrillo were of

private nature or under the color of authority. If it is determined that he was not

working under the color of authority, and his actions were purely private clearly

the notice provisions of the New Jersey Torts Claims Act would have no

applicability.

However, assuming that his actions are under to be the color of authority,

which is the contention of the plaintiff, it is also our position that the New Jersey

Tort Claims Act would be inapplicable.

It is the position of the plaintiff that the actions are intentional, outrageous,

fraudulent, and malicious and constitute willful misconduct.

In accord with N.J.S.A. 59:3-14:

6

> "Nothing in this Act will exonerate a public employee
> from liability if it is established that his conduct was
> outside the scope of his employment or constitute a
> crime, actual fraud, actual malice or willful
> misconduct,"

In the case of <u>Velez v. Jersey City</u>, 358 N.J. Super 224, 243 it was

established that when conduct falls within the ambit of NJSA 59:3-14, the notice

provisions of the act would run counter to the legislative intent and over all

purpose of the act.

Finally, it is clear that when defendant, John Centrillo, who is a police

officer, refused to disclose crucial information to another police officer to wit the

identity of James Linari, he committed a clear violation of NJSA 2C:30-2 which is

titled "official misconduct" and is under the New Jersey Code of Criminal Justice.

This statute states in pertinent part:

> "A public officer is guilty of official misconduct when,
> with purpose to obtain a benefit for himself or another
> or to injury or to deprive another of a benefit" he
> refrains from performing a duty which is imposed
> upon him by law and was clearly inherent in nature of
> the office ."

Given the outrageous conduct of defendant Centrillo, it is the plaintiff's

position that the New Jersey Torts Claims requirements are inapplicable.

## POINT VI

**A.   THE DEFENDANT CENTRILLO UTILIZED HIS POSTION AS A POLICE OFFICER TO PARTICIPATE IN A CONSPIRACY TO DEPRIVE PLAINTIFF,  MARK VAN ON HIS CIVIL RIGHTS AND WAS ACTING UNDER THE COLOR OF AUTHORITY**

Firstly, the defendant's argument again presupposes the veracity and accuracy of John Centrillo's actual involvement in the matter.  According to defendant, John Centrillo's version of events in support of his argument was that he was not acting under the color of authority, yet only as a private citizen.

However, it is the plaintiff's position that John Centrillo consciously participated in a conspiracy with other co-defendants, so as to cause injury to Mark Van.  It is the position of the plaintiff that he in concert with the North Haledon defendants concocted a version of events, so as to trigger an investigation into Mark Van.  To effectuate this process, it is the position of the plaintiff, that Centrillo was using his position as a police officer to report criminal acts committed by other police officers, to the appropriate authorities.  Further, it is a stretch of the imagination to believe that John Centrillo did not purportedly use his police authority by claiming that he had a right to not divulge the name of another police officer John Centrillo, when he became aware that there was an ongoing investigation.

It has been held in numerous cases that the question whether the defendant was working under the color of law or not would depend upon the facts and the circumstances in the case and the nature of the actions taken by the officer.

See <u>Barna v. City of Perth Amboy</u>, 42 F. 3rd 809.  The Barna case looked at the misconduct to determine whether it was in furtherance of the State's goals at 16.  Herein, defendant John Centrillo created a scenario where he had obligation to report an occurrence in New York City with the North Haledon Police Department.  It is our position that he is willing to be used as a pawn in this concocted version of events, the purpose of having an investigation commenced against Mark Van.  He stood by his story that he contacted a Sgt. of the North Haledon Police Department to disclose in essence the potential commission of a crime to wit the improper of display and misidentification of Mark Van as a North Haledon Police Officer.   If such in reality occurred, it would have been clearly in furtherance of State goals and in fulfillment of his duty as a police officer to report such information.  It is significant to note that Chief Ferrante, a North Haledon defendant herein testified at depositions that he wanted to get reports from the parties who reported information about Mark Van (see Exhibit 34 & 36).

Clearly, Chief Ferrante perceived that individuals reporting this information were performing in their official capacity otherwise he would not be talking in terms of getting "written reports" from these officers.  Further, Ferrante testified that I is "common" for police officers to give other departments such reports as a courtesy.

**(B)    THE ACTIONS BY DEFENDANTS INCLUDING CENTRILLO WERE
CALCULATED TOWARDS DEPRIVING MR. VAN OF HIS LIBERTY,
INTEREST IN  PURSUING OCCUPATION OF HIS CHOICE AND
LIVELIHOOD**

It is axiomatic that he term "liberty, as used in the due process clause"
includes amongst various items the liberty of one to pursue the livelihood or
vocation of their choice.

It is interesting that the defendant Centrillo chooses to cite <u>Versage v.
Twp. Of Clifton</u>, 984 F. 2nd 1359, 1371.  They use this case to stand for this
purported proposition "it is firmly established that damage to one's reputation with
the deprivation of present or future employment is not a liberty interest that is
protected by the 14th amendment".

This language is taken directly out of defendant Centrillo's brief at Page
23.   However, no where in the case of <u>Versage</u> is that language stated.

In fact, that language is the distortion of the holding of <u>Versage </u>which
actually supports plaintiff's proposition.  In fact, that case in pertinent parts stated

> "Courts have addressed the constitutional
> requirement for a protected interest in a reputation in
> a volunteer context and have refused to find such a
> protected interest where the plaintiff has failed to
> show lost opportunity for employment.  Citing <u>Jungels
> v. Pierce</u>, 825 F. 2nd 1127, 1131(7th Cir. 1987)  The
> <u>Versage</u> case goes on further to cite <u>Shands v. City of
> Kennett</u>,  789 F. Sup. 989, 985 which found that there
> was is no liberty interest implicated in volunteer fire
> department where the plaintiff's failed to establish that
> their termination caused them economic damage or
> lost opportunity."

10

The clear implication of these cases is that when a liberty interest in pursing their livelihood is effected, then  a liberty interest protected by the 14th Amendment is at stake.  The counsel for defendant Centrillo in citing <u>Versage</u> consciously omitted reference to a whole litnay of cases cited within <u>Versage</u> that stand for the distinct proposition that if ones primary means of employment is implicated a "liberty interest" is at stakes.  For example, The <u>Versag</u>e case also cites <u>Robb v, City of Philadelphia</u>, 733 F. 2nd  286, 294 which states in pertinent part

> "the stigma to reputation alone, absent some accompanying deprivation of present or future employment , is not a liberty interest protected by the 14th Amendment."

It is beyond comprehension how defendant's counsel cites <u>Versage</u> for the proposition for which they make when, it stands for the complete opposite.  There are other cases cited by defendant Centrillo's counsel which are factually different that the case <u>sub</u> <u>judice</u>.

In the case under review it is Van's allegation that the actions of the defendant police officers were egregious and outrageous.  In particular that they concocted an allegation that a fellow police officer had committed a crime, to wit the misidentification of himself as a North Haledon Police Officer when he was not, to extricate himself from an arrest.

This goes well beyond any claim of defamation, as it involves a conscious effort on the part of several defendants, in an conspiratorial effort to use their police powers to initiate an investigation into alleged criminal activity by Mr. Mark

Van, knowing full well that such an investigation would lead to deprivation not only to Mr. Van's employment with Harrington Park but to any future employment as a police officer. The Court must not ignore the fact police officers are held to a very high standard and such allegations seriously and detrimentally impair the officer's career opportunities.

The case of <u>Meyer v. Nebraska</u>, 262 U.S. 390, 399 is illuminating. The Meyer case involved a situation where a school teacher was prosecuted pursuant to a statute prohibiting teaching of a class in a language other than English. In addressing the prosecution, the Court stated the following in pertinent part

> "While this Court has not attempted to define with exactness the liberty thus guaranteed, the issue has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children…"

As the Court goes on further to state generally these privileges are long recognized as essential to the orderly pursuit of happiness by free men.

In essence, there is no case cited by defendant John Centrillo which involves conduct as egregious as contained herein. This case involves police officers who are duty bound to uphold the law, who created a false allegation of a crime against a fellow police officer and then utilized their authority to initiate an investigation. The clear purpose of such was undermining Mark Van's career as a police officer.

The case of <u>City of Sacramento v. Lewis</u>, 523 U.S. 833 deals with the issue of procedural due process and/or substantive due process violation when the conduct is conscience shocking.   The case states in pertinent parts

> " it is on the contrary, behavior at the other end of the culpability spectrum that would must properly support a substantive due process claim, conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to raise to the conscience shocking level." at 849

## (C)    PLAITNIFF DID PROVIDE SPECIFICITY IN ITS' COMPALINT

Firstly, the issue of which constitutional right was violated as been previously addressed, both in the form of a procedural due process violation and a substantive due process violation.  In particular, it has previously been argued, Mr. Van does have a liberty interest pursuing the career of his choice to be a police officer.

Further, the specific involvement of defendant, John Centrillo, in this deprivation was specifically outlined in the factual background of the complaint.

Specifically, the plaintiff alleged amongst other things that

> "Defendant, John Centrillo, engaged in a conspiracy with the defendants Mark Rowe, Parenta, Darby and Ferrante  to concoct facts to an investigation against Mark Van would be initiated and justified.   In particular, the defendants contrived a story whereby it was claimed that Mark Van was in the City of New York and was arrested by a New York City Police Officer and then in an effort to extricate himself from a problem utilized a North Haledon badge which he had retained from his prior employment.  This in fact never occurred, and that the story by these officers was concocted as a conspiracy among these individual to damage and interfere with Mr. Van's constitutional

right to pursue his occupation as a police officer."
See attached Exhibit A to defendant Centrillo's
moving brief.

**POINT VII**

**THE PLAINTIFF HAS ESTABLISHED ACTS OF HARRASSMENT
BY DEFENDANTS INCLUDING CENTRILLO WHICH RISES
TO A CAUSE OF ACTION UNDER 42 USC 1983**

The case cited by defendant Centrillo, <u>Garcia v. Nunez</u>, 408 U.S. District

Lexis 39096 (D.N.J. May 2008) actually supports the plaintiff's claim for acts of

harassment to such an extent that it rises to a constitutional deprivation.

The Garcia case involved harmless acts such as questions by police

officer "where are you going" and "Eddie where have you been" and the police

officer driving his car next to Garcia for few a seconds while asking Garcia the

aforementioned questions.  The Court concluded that these were harmless acts

and did not rise to a cognizable violation of Garcia's civil rights.  Further, the

Garcia case acknowledged that a plaintiff may state a valid 1983 claim based

upon police harassment.

The Court in stating this proposition, cited <u>Harris v. City of West Chicago</u>,

2002 U.S. Dist. Lexis 16579 at Page 10.  The Court also cited the case of

<u>Gunderson v. Schlueter</u>, 904 F. 2d 407,410 and made a contrast between non-

intrusive police observation with highly intrusive surveillance methods that

caused the plaintiff a loss of business.

It is acknowledged, that police harassment without more cannot form the

basis for a 1983 action.   See <u>Arnold v. Trumeper</u>, 833 F. Sup. 678, 682.

However, the circumstances in this case go way beyond verbal harassment and

abusive language or otherwise unprofessional conduct which normally forms a basis  the court's decision not finding a  basis for a 1983 cause of action.

Herein, the defendants had clear motivation to cause damage to Mr. Van and acted in a fashion that would clearly constitute harassment to the greatest extent.  To wit, concocting a knowingly false criminal accusation against a fellow police officer.  In the case of <u>Goldberg v. Weil</u>, 707 F. Sup. 357, 361 Court found that specific allegation including comments as  watch it we are going to get you and your family  simply do not rise to the level of constitutional violation. However, herein the defendants did much more than just threaten to get Mr. Van, they concocted a false criminal investigation attributing series of events which they knew would cause or potentially cause serious harm to Mark Van.  Clearly, if there is any case that constitutes harassment, it is this case.   Further, in regard to defendants' allegation that there is no evidence of conspiracy under 1983, this is inaccurate.  While there may not be direct proof, which is often the situation in civil and criminal cases, there is compelling circumstantial evidence of conspiracy.  To wit, if a jury was to accept James Linari's testimony that he never told Det. Centrillo any event occurred in New York City involving Mark Van, then there is compelling circumstantial evidence that this whole situation was concocted through an agreement, amongst the defendants herein including Centrillo.

## POINT VIII

The plaintiff concedes this point.

16

## POINT IX

The plaintiff concedes this point.

## POINT X

**THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE PLAINTIFF MEETS THE FIVE PRONG THIS SET FORTH BY DEFENDANT**

In regard to the first prong of the test, it is without dispute Mr. Van had an expectation that he would continue to work for the Borough of Harrington Park and as expectation of the economic advantage that would flow there from.

The defendant's real argument is that plaintiff was not terminated because of the actions of Centrillo and the other defendants. However, there are genuine issues as to material fact that fact finder must determine as to the impact that the actions had on Mr. Van's employment.

Chief Moppert testified during depositions that his termination from the Borough of Harrington Park was a culmination of several things including the issues relative to the actions of the defendants.

## POINT XI

### DEPENDING UPON THE JURY'S VERDICT PUNITIVE DAMAGES MAY BE AWARDABLE

While it is conceded that punitive damages are not awardable against a public entity, the actions herein, in particular, those of Centrillo's were motivated by evil motive or intent and/or reckless or careless in difference and federally protected rights of others.

Certainly, punitive damages under the circumstances can be awarded against the individual defendants herein.

18

## <u>CONCLUSION</u>

Based upon the foregoing it is respectfully requested that the defendant,

John Centrillo's motion for summary judgment be denied as there are genuine

issues of material fact which must be decided by a fact finder.

Respectfully,

Faugno & Associates, LLC

/s/Paul Faigno
Paul Faugno

Dated:  January 9, 2009