Paul Faugno
Faugno & Associates, LLC
125 State Street
Suite 101
Hackensack, NJ 07601
201-342-1969
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ | : Civil Action No.05-5595 (JLL) |
| MARK VAN | : |
| | : |
| Plaintiff(s), | : |
| | : |
| -vs- | : |
| | : |
| BOROUGH OF NORTH | : |
| HALEDON, et al | : |
| | : |
| Defendant(s). | : |
| _____ | : |

_____

Brief in opposition to Borough of North Haledon
Defendants' motion for Summary Judgment

_____

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..........................................................1

STATEMENT OF FACTS...............................................................4

LEGAL ARGUMENT....................................................................5

POINT I

      INDEFENDANT OFFICER ARE NOT ENTITLED TO
      A QUALIFIED MMUNITY HEREIN……...………………………………..5

POINT II

      THE ACTIONS OF THE DEFENDANT OFFICERS
      HEREIN DOES MEET "SHOCK THE CONSCIENCE"
      STANDARDS………………………………….………………………...7

POINT III

      THE PLAINTIFF HAS PROPERLY ALLEGED
      PROCEDURAL DUE PROCESS, AND SUBSTANTIVE
      DUE PROCESS VIOLATIONS AGAINST MR. MARK
      VAN………………………………………………………………….9

POINT IV

      THERE ARE GENUINE ISSUES OF MATERIAL FACT
      AS TO WHETHER OR NOT DEFAMATORY STATEMENTS
      WERE MADE WITHIN ONE YEAR  PRIOR TO
      NOVEMBER 28, 2005 THE DATE OF THE FILING OF
      THE COMPLAINT………………………………………………………11

POINT V

      PLAINTIFF CONCEDES THIS POINT………………….………………12

POINT VI

      THERE ARE GENUINE ISSUES OF MATERIAL FACT
      WHETHER THERE WAS TORTIOUS INTERFERENCE
      WITH MR. VAN'S CONTRACTUAL RELATIONS AND
      BUSINESS RELATIONS…………………………………….…………12

POINT VII
     **THERE IS NO BASIS TO BAR THE TESTIMONY OF
     PLAITNIFF'S PROPOSED EXPERT**……………………………..…14

CONCLUSION..................................................................................28

## TABLE OF AUTHORITIES

**Cases**                                                **Page**

Benigni v. City of Hemit, 879 F. 2nd 473 (9th Cir 1989)……………….…..9

Canico v. Hurtado, 144 N.J. 361, 365 (1996)……………………….…..5

County of Sacramento v. Lewis, 523 U.S. 833 (1998)……………….…...7

Daubert v. Merrill Pharmaceutical, Inc., 509, U.S. 579 (1993)……..….14

Gazette v. City of Pontiac, 41 F. 3rd 1061 6th Cir. 1994…………………..7

Harrell v. Cook, 169 F. 3rd 428 (7th Cir. 1999)………………………...7

Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150………………........14

Schieber v. City of Philadelphia, 320 F. 3rd 409 (Third Cir. 2003)……….7

Searles v. South Eastern PA Trans Authority, 990 F. 2nd 789
(3rd Cir. 1993)………………………………………………………….…..8

Pieckneck v. Commonwealth of Pennsylvania, 36 F. 3rd 1250,
1259 (3rd Cir. 1994)…………………………………………………….....9

Tyrus v. Urban Search Management, 102 F. 3rd 256 (7th Cir. 1996)…….15

Varrallo v. Hammond, Inc. 94 F. 3rd  842, 848………………………..11

## PRELIMINARY STATEMENT

The plaintiff will not respond to the gratuitous comments by defendant, North Haledon regarding his client's reputation being dragged through the Court system, as this is not appropriate argument for a preliminary statement.

The underlying premise of all of the defendants' arguments is that Mark Van has no proof of the allegation that a false criminal allegation was concocted against him.  However, defendant's counsel ignores the reality that many cases in our system of justice are often proved not by direct proof yet by circumstantial proof.  It is without question that  cases both civil and even criminal with a higher burden of proof, are often solely proven through circumstantial evidence.  Herein, there is compelling circumstantial evidence that the defendants engaged in a conspiratorial arrangement to concoct false accusations against Mr. Van.

Firstly, the timing of all of the events herein are compelling circumstantial evidence.  With in three weeks of the North Haledon defendants becoming aware that Mark Van was employed by the Borough of Harrington Park, a series of malicious actions by the defendants took place.

The defendants' counsel bases their argument on the presupposition that all of the facts which were testified to by the defendants actually occurred.  However, when one looks at the circumstantial evidence and through the application of common sense all of the facts as presented by the defendant's witnesses are incredulous.  By way of glaring examples, is the following:

1.     Detective Ferrante claims to have learned from defendant Mark Rowe about an event involving Mark Van.  However, Detective Ferrante testifies

that when confronting Mark Rowe about the source of that information, he allowed a subordinate officer which he had full authority over to refuse to disclose source of the information.

2.    That Chief Ferrante would commence an investigation, with no contemporaneous documents reflecting that such an investigation commenced. The Court must be mindful that this is not only an allegation of a crime by a citizen but by a police officer which would have compelled that documents must be created in establishing the commencement of an investigation.    This in of itself,  circumstantial evidence that the facts did not occur as so stated by the defendant Ferrante or the other defendants.  Further, Ferrante contradicted himself during his own testimony when he stated that  he would not initiate an investigation based upon hearsay.  This is precisely what he did according to his version of facts.

3.    If defendant Ferrante's testimony as to the facts in his deposition was accurate, and he really only wanted to make an inquiry of Mr. Van whether or not he had a badge, there were clearly methods which was much more innocuous than sending two uniformed police officers to Mark Van's place of employment.  It should be noted that the Township of North Haledon is in a different county from the Borough of Harrington Park.  Thus these officers actually had to cross county lines to effectuate their so called investigation.  A simple phone call would have sufficed if this was their true intention.  These facts all militate against any good faith intentions on the part of Borough of North

Haledon defendants, and is compelling circumstantial evidence of their bad faith and the fact that they fabricated this entire set of facts.

4.    The defendants in their arguments ignore the fact that the entire source of this information has denied ever providing anyone with such information.  Clearly, this creates a genuine issue of material fact for jury to decide.  If a jury determines that James Linari did not in fact arrest Mark Van and did not in fact disclose this information to John Centrillo, then there is clearly circumstantial and direct evidence that North Haledon defendants fabricated the events along with Centrillo.

5.    The defendants' counsel ignores the fact that Mark Van has denied unequivocally that such an event ever occurred in New York City, and in fact did not occur.  This is not only supported by Mark Van and James Linari's version of the situation, but by the fact that Harrington Park conducted an internal affairs investigation and contacted the subject nightclub in New York which revealed no such incident.

6.    If the facts had occurred as set forth, it is incredulous that Borough of North Haledon defendants, to wit Chief Ferrante, Det. Parrenta and Darby to allow  another police officer, Centrillo, to refuse to disclose crucial information to an investigation.  They had every bit of authority and power to compel such and by failing to do so, this is compelling evidence that the events did not occur as set forth by all of these defendants.

In regard to the legal arguments made, these will be addressed in the accompanying points to this brief.

3

## Statement of Facts

The plaintiff will rely upon the statement of undisputed material facts incorporated herein by reference.

## LEGAL ARGUMENT

### POINT I

### INDEFENDANT OFFICER ARE NOT ENTITLED TO A QUALIFIED IMMUNITY HEREIN

The lynchpin of any qualified defense is the "good faith" of a public employee.

Thus, the actions of any defendants seeking qualified immunity under a 1983 action, requires them to sustain the burden of proof that their acts were objectively reasonable or that they performed them with subjective good faith. Leange v. Jersey City Board of Education, 399 N.J. Super 329, 360. The Leange case stands for the proposition that whether or not a public employee acts in good faith is a fact issue to be decided at a preliminary hearing. Citing Canico v. Hurtado, 144 N.J. 361, 365 (1996). Herein accepting the plaintiff's allegations in a light most favorable to him, the allegation is that the defendants conspired to concoct criminal allegations against Mr. Van, in an effort to jeopardize and undermine his career as a police officer.

Clearly, if these facts are found, there would be absolutely no qualified immunity as there would be no objective good faith or objectively reasonable good faith. This proposition is clarified under New Jersey Law and in particularly the New Jersey Tort Claims Act. In accord with N.J.S.A. 59:3-3

> "A public employee is not liable if he acts in good faith in execution or enforcement of any law…"

Again, the actual question to be answered is whether the actions were in good faith.

The case cited by the defendant herein, <u>Hunter v. Bryant</u>, 502, U.S. 224

also supports this proposition.  It states in pertinent part that

> "The qualified immunity gives ample room for
> judgment by protecting all but the plainly incompetent
> or those knowingly violate the law at Page 228."

This case does not involve mistaken judgment or subjective good faith as

to the enforceability of law, yet calculated actions by police officers in  falsely

accusing another police officer committing a criminal offense.  The actions

committed by the defendants herein constitute violations of New Jersey criminal

law.  In particular, <u>NJSA</u> 2C:28-4 which criminalizes  such conduct when it states.

> "A person who knowingly gives or causes to be given
> false information to any law enforcement officer with
> the purpose of implicating another commits a crime of
> the 4th degree".

Herein, it is without question that Van's liberty interest was at stake, when

the defendants falsely accused Van of committing a crime.

**POINT II**

**THE ACTIONS OF THE DEFENDANT OFFICERS HEREIN
DOES MEET "SHOCK THE CONSCIENCE"STANDARDS**

The cases cited by defendant, in particular, <u>Witeland Woods v. Twp. Of West Windsor</u>, 193 F. 3rd 177 stands for the following general proposition.

> "to generate liability, executive action must be so ill conceived or malicious that it "shocks the conscience".

In the <u>Witeland </u>case the police officers were simply not allowing parties to videotape a Twp. Planning Commission Meeting.

The facts in <u>Witeland </u>does not rise to the level of maliciousness that exists in this case, where police officers in concert with each other knowingly fabricated that another police officer had committed a criminal offense.  The defendants also cite the case of <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998) which dealt with whether or not a high speed chase raised to a level of deprivation of substantive due process.  The Court in <u>County of Sacramento</u> found that the shock the conscience standard was not met since there was no purpose to cause harm or intent to cause harm.

Again, the above facts are clearly different from those being examined herein. Herein, the allegations are that the defendants knowingly, willingly, and intentionally fabricated events so as to undermine and jeopardize the career of Mark Van.  The defendants cite other cases having "far more egregious conduct", yet that claim is not accurate.   <u>Gazette v. City of Pontiac</u>, 41 F. 3rd 1061 6th Cir. 1994, <u>Schieber v. City of Philadelphia</u>, 320 F. 3rd 409 (Third Cir. 2003) <u>Harrell v. Cook</u>, 169 F. 3rd 428 (7th Cir. 1999); and <u>Searles v. South Eastern PA Trans</u>

<u>Authority</u>, 990 F. 2nd 789 (3rd Cir. 1993).   These cases all involve either gross negligence or negligence as the underlying conduct where herein, the conduct involves intentional and calculated actions directly intended to cause the  desired effect, to wit, to undermine the career of Mark Van as a police officer.

**POINT III**

**THE PLAINTIFF HAS PROPERLY ALLEGED PROCEDURAL
DUE PROCESS, AND SUBSTANTIVE DUE PROCESS
VIOLATIONS AGAINST MR. MARK VAN**

The defendant frames their argument in the context of defamatory

information being spread regarding Mr. Mark Van.  This case involves much more

than defamatory and slanderous conduct.  In fact, the allegations of the plaintiff is

the defendants concocted an allegation that Mr. Van engaged in conduct which is

not only volatile of internal police regulations but also violative of our criminal

statutes.  This was acknowledged by defendants Ferrante when he wrote letter to

plaintiff's counsel advising that the actions of Mark Van constituted potential

criminal violation.  See attached Exhibit 24.

Herein, the liberty issue at stake is the right of Mr. Van to pursue the

occupation of his choice.  The fact of the matter is that since Mr. Van's

termination as a police officer, he has not been employed a police officer since.

As stated in the case cited by the defendants, Pieckneck v. Commonwealth of

Pennsylvania, 36 F. 3rd 1250, 1259 (3rd Cir. 1994) a person has a liberty interest

to pursue the occupation of their choice free from unreasonable governmental

interference.  "What more governmental interference could one conceive, than

police officer fabricating criminal allegations against another police officer with

the knowledge of the consequences that would have on the individual's career.

The case of Benigni v. City of Hemit, 879 F. 2nd 473 (9th Cir 1989) stands for the

proposition that actions of police officers which involves an interference with a

right to pursue one's occupation is actionable.

**There was of deprivation of a Van's right to pursue his occupation of choice**.

The defendant misinterprets the allegations of plaintiff.  The defendants argue in Point III of its brief that by allowing Van to resign from North Haledon in 2000 proves that they allowed him to continue to pursue his occupation as a police officer.  However, this fact has nothing to do with this case.  The conduct which forms the basis for this claim is the calculated effort by the defendants to interfere with his right to pursue his occupation, by falsely concocting of criminal allegation against him in 2004.

## POINT IV

**THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER OR NOT DEFAMATORY STATEMENTS WERE MADE WITHIN ONE YEAR  PRIOR TO NOVEMBER 28, 2005 THE DATE OF THE FILING OF THE COMPLAINT**

The defendants herein are incorrect in asserting that there is no proof that defamatory statements were made within one year prior to November 28, 2005.

It should be noted, in regard to Exhibit 1 attached to Undisputed Material of Facts, the voluntary resignation of Mark Van from the Borough of North Haledon on November 3, 2000 contained a representation by Borough of North Haledon that they would fully provide specific language to any future employers of Mark Van.

Despite this representation, defendant Ferrante had a conversation with Chief Moppert of the Harrington Park Police Department in the month of November 2004, at which time Chief Ferrante stated

> "that he had received a phone call from a friend of his in New York City Police Department who provided information that Mark Van had improperly utilized a North Haledon police identification…"

Defendant Ferrante in this conversation refused to identify the name of that person.  Defendant Ferrante further stated

> "that we should meet sometime and he would tell me about Mark Van."

It is the position of the plaintiff that none of these events ever occurred in New York and that this entire matter never occurred.  Accordingly, there exists genuine issues of material fact whether these statements by Chief Ferrante

constituted defamatory statements and they occurred within one year of the filing of the complaint.

## POINT V

In regard to the emotional distress claim, plaintiff concedes this point.

## POINT VI

**THERE ARE GENUINE ISSUES OF MATERIAL FACT WHETHER THERE WAS TORTIOUS INTERFERENCE WITH MR. VAN'S CONTRACTUAL RELATIONS AND BUSINESS RELATIONS**

If a jury was to determine that these defendants concocted false allegations against Mark Van there would be clearly a basis for a verdict for tortuous interference.

The plaintiff does agree with the case cited by the defendants, Varrallo v. Hammond, Inc. 94 F. 3rd 842, 848. Sets forth the element of this cause of action.

1.   The plaintiff had a reasonable expectation of economic advantage from being a police officer. The fact that he has worked sporadically since the date of his discharge from Harrington Park does not change the fact that he had the expectation of economic expectation as a police officer.

2.   There is an issue of material fact as to whether these actions were done intentionally or with malice.   Clearly, if they falsely concocted these allegations, then the finding of malice would be presupposed.

3.   As previously argued, there is genuine issue of material fact as to the causal connection between the defendants conduct and Vans loss of his job.  Of course, the defendants argue that Mr. Van lost his employment with Harrington

Park for other reasons.  However, it was testified by Chief Moppert of the Harrington Park Police Department, that he was terminated as a consequence of accumulation of events including the investigation by the Borough of North Haledon and the allegations of him being involved in an incident in New York City, and the anonymous letter received by the Borough of Harrington Park.  See Exhibit 21.

4.    The loss of Van's position as a police officer, with the Borough of Harrington Park constitutes actual damages.  He has not worked as a police officer since he lost his position, and clearly this constitutes actual damages.

## POINT VII

**THERE IS NO BASIS TO BAR THE TESTIMONY OF PLAITNIFF'S PROPOSED EXPERT**

Federal Rule of Evidence 702 states the following

> "If scientific, technical or other specialized knowledge
> which will assist the tries of fact to understand the
> evidence or to determine a fact in issue a witness
> qualified as an expert by a knowledge, skill,
> experience, training or education may testify in the
> form of opinion or otherwise, if 1) the testimony is
> based upon sufficient facts or data (2) the testimony is
> the product of reliable principle and methods and (3)
> the witness has applied the principles and methods
> reliably agree to the facts of the case".

Firstly, in regard to the issue of qualifications, Dr. Kirkham is clearly qualified. Firstly, we are not dealing with scientific or highly technical issues, but we are dealing with specialized knowledge regarding law enforcement procedures. Dr. Kirkham's curriculum vitae and deposition testimony clearly established that he has extensive experience and training in the field of police conduct and investigations.

In regard to the issue of whether or not the opinions meet the standards in accord with Daubert v. Merrill Pharmaceutical, Inc., 509, U.S. 579 (1993) the court must recognize the following. The Daubert case dealt with highly scientific and technical opinions, and it has been held and repeatedly stated that not all the Daubert's factors can be neatly applied to all expert testimony.

As was stated in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 et seq. the Daubert must be a flexible one. Kumho also states that

"The factors identified in Daubert may or may not be pertinent in accessing reliability depending upon the nature of the issue, the expert's particular expertise and the subject of his testimony".

Clearly, a police misconduct expert cannot and should not be held to the same Daubert factors, as we are not dealing with expert testimony which is based upon scientific foundations.

Herein, Dr. Kirkham is merely being utilized as an expert to provide the jury with some understanding and clarification as to the proper methodology in conducting police investigations.

This type of issue is addressed in the case of Tyrus v. Urban Search Management, 102 F. 3rd 256 (7th Cir. 1996) which made note that all the Daubert Factors apply to the expert testimony from a psychologist.

In essence, the argument made by defendants herein, would effectively bar the utilization of experts in any police misconduct case, and they cannot meet Daubert standards.

In regard to the claim of lack of methodology, a review of deposition testimony establishes that Dr. Kirkham was very careful and professional in setting forth the manner and method in which an investigation should have been conducted given the facts herein.

For example, the defendants make issue of the fact that Dr. Kirkham opined that Ferrante should have been distrustful of his sergeant. This is a mischaracterization, of Dr. Kirkham's deposition testimony. Dr. Kirkham testified at page 104 going to 12 as to the following.

15

"while he should have been cautious initially then within a matter of minutes, once the sergeant tells you that I cannot tell you that name I don't want to get him in trouble, he had a duty as a chief law enforcement officer without doubt to tell him that it is not an option for you. You come in here, you must tell me or you are suspended and you are subject to be prosecuted criminally under the laws of the state.

This is completely different than Dr. Kirkham testifying that Chief Ferrante should have been distrustful of Sgt. Rowe. The defendant's counsel herein continually mischaracterizes the deposition testimony of Dr. Kirkham. Dr. Kirkham was very articulate and professional in the manner in which he stated his opinion and which can be established from a review of his deposition testimony. Further, in regard to the issue of Dr. Kirkham not having specific experience in police investigative matters, Dr. Kirkham did testify that it his opinion that these procedures are followed throughout the United States and in all states in regard to the conduct of police investigations. See deposition transcript 67-1-5. These investigative procedures or methodology are universal in nature and apply to all the states within United States. In regard to Attorney General's guidelines and specific regulations, these typically apply to internal affairs investigation. This case did not involve internal affairs investigation, as Mr. Van was not employed with the Borough of North Haledon. The testimony and opinions of Dr. Kirkham, deal with police officers when they are investigating allegations of criminal conduct in a general sense. In essence, defense counsel is really making an argument as to what weight should be given to the testimony

16

and this is an issue for the fact finder and not for the Court to determine from the outset.

## CONCLUSION

Based upon the foregoing it is respectfully requested that the Borough of North Haledon defendants' motion for summary judgment be denied as there are genuine issues of material fact which must be decided by a fact finder.

Respectfully,

Faugno & Associates, LLC


/s/Paul Faigno_____
Paul Faugno

Dated:  January 12, 2009