**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
:
MARK VAN,                                            :
:
               Plaintiff,               :
     v.                                      :     CIVIL ACTION NO. 05-5595 (JLL)
:
BOROUGH OF NORTH HALEDON,                :
et al.,                                              :     **OPINION**
:
               Defendants.              :
_____:

**LINARES**, District Judge.

Pending before this Court are three motions – (1) a motion for summary judgment by Defendants John Centrello ("Centrello") and the Dumont Police Department ("DPD"); (2) a motion for summary judgment by Defendants Mark Rowe ("Rowe"), North Haledon Police Department ("NHPD"), Joseph Ferrante ("Ferrante"), Todd Darby ("Darby"), and David Parenta ("Parenta") (collectively, "NHPD Defendants"); and (3) a motion to dismiss claims for punitive damages only by Centrello and the DPD.  Plaintiff Mark Van ("Plaintiff" or "Van") has filed opposition to all motions, except to that of the DPD.  As to the DPD, Van concedes the points raised in the motions and advises the Court that he will not be proceeding any further on claims against it.  Thus, the DPD is dismissed with prejudice from this suit.

Regarding all other Defendants, Van has filed opposition.  The Court evaluates the motions on the papers pursuant to Fed. R. Civ. P. 78.

I.     __Factual History__[1]

Plaintiff Mark Van was employed by the NHPD from April 21, 1999 until he voluntarily resigned in December of 2000.  (Centrello SOF ¶ 1.)[2]  Plaintiff's voluntary resignation resulted from disciplinary charges instituted against him by Defendant Chief Ferrante of the NHPD.  (Id. ¶¶ 5-7.)  Specifically, Plaintiff was charged with filing false reports regarding an incident that occurred on July 28, 2000.  (Id.)  When he resigned, Van and the NHPD entered into an agreement by which the NHPD's future communications to inquiries by a future employer would be as follows: "Patrolman Mark Van served as patrolman from April 28, 1999 to November 3, 2000 where he submitted his voluntary resignation effective November 3, 2000."  (Pl. SOF ¶ 1; NHPD Motion, Dec. of Counsel, Ex. C).  The above language was memorialized in a Borough of North Haledon Resolution, dated November 2, 2000, and signed by Mark Van and Randy George, North Haledon's mayor at that time.  (NHPD MSJ, Dec. of Counsel, Ex. C.)  In exchange for the resignation, Chief Ferrante agreed to drop all pending charges against Plaintiff.  (Id.)

---

[1] Plaintiff filed two "Statement of Facts" ("SOF") – one in response each motion for summary judgment.  However, the two statements are exactly the same.  Thus, "Pl. SOF" refers to Plaintiff's SOF in opposition to both motions for summary judgment.  Further, NHPD SOF refers to the SOF submitted in support of the NHPD Defendants motion for summary judgment, and Centrello SOF refers to the SOF submitted in support of his motion for summary judgment.

[2] L. Civ. R. 56.1(a) instructs the party opposing summary judgment to furnish "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement."  Furthermore, "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."  L. Civ. R. 56.1(a).  Finally, "the opponent may also furnish a supplemental statement of disputed material facts..." Id.  Here, Plaintiff submitted his own supplemental statement of facts but neglected to respond to either Centrello's or the NHPD Defendants' SOF.  Thus, unless explicitly contradicted by Plaintiff's supplement SOF, the Court takes Centrello's and the NHPD's factual statements as undisputed.

On November 8, 2004, Plaintiff began employment as a police officer for the Borough of Harrington Park Police Department. (NHPD SOF ¶ 3.) This employment commenced on a probationary basis. (Id.) Plaintiff did not disclose to the HPPD his prior employment with the NHPD. (Id. ¶ 4.) An individual by the name of Peter Faye also worked at the HPPD, and Faye knew Defendant Centrello from his prior work with the DPD. (Pl. SOF ¶ 7.) Faye also knew Defendant Parenta. (Id. ¶ 6.) Sometime after Van began his new employment, Faye contacted Parenta and advised him that Plaintiff was working for the HPPD. (Id. ¶ 8.) One day later, Parenta informed Chief Ferrante of this fact. (Id. ¶ 9.) Mark Rowe eventually also learned of Plaintiff's employment with the HPPD. (Id. ¶ 10.)

According to Defendant Centrello, a police detective for Defendant Borough of Dumont Police Department ("DPD"), two police officers approached him in late 2004 and informed him that a gentleman by the name of Mark Van had been involved in a fight in front of the China Club in New York on November 22, 2004. (Centrello SOF ¶ 11, 13.) Those officers – James Lanari and Anthony Blandino – also informed Centrello that the individual named Mark Van had been arrested in front of the China Club and had subsequently displayed a NHPD badge. (Id. ¶ 11.) Lanari claimed to have let Van go after Van displayed the NHPD badge. (Id. ¶ 12.)

Centrello immediately called Defendant Sergeant Marc Rowe of the NHPD and informed him that "a friend in the NYPD" had placed someone under arrest after a fight outside the China Club in New York City, but that his friend had released the person after the individual identified himself as Mark Van and produced a NHPD badge. (NHPD SOF ¶¶ 5-7.) Centrello also refused to disclose the identify of the NYPD officer, because he claimed that the officer lived in New Jersey and could lose his job if it was discovered that he lived there, and because the officer had

failed to report this incident.  (Id. ¶ 8.)  Rowe subsequently took the information and relayed it to

Detective David Parenta, and both officers then conveyed it to Chief Ferrante of the NHPD.  (Id.

¶ 9.)  Parenta finally called Centrello to verify the information he had provided to Rowe, and

Centrello verified everything but still refused to identify the NYPD officer.  (Id. ¶10-11.)

    After Centrello confirmed the story, Chief Ferrante ordered Darby and Parenta to go the

HPPD and ask Plaintiff whether he still retained his North Haledon police badge and whether he

had been involved in an incident outside the China Club in New York City on November 22,

2004.  (Id. ¶ 12.)  The officers were instructed to retrieve Van's NHPD badge and identification

if he still possessed them.  (Id. ¶ 14.)  Thus, on November 24, 2004, Parenta and Darby visited

Plaintiff at the HPPD.  (Id. ¶ 17.)  They approached Plaintiff in the parking lot of the HPPD, but

Plaintiff requested to speak to the officers at a location away from HPPD headquarters.  (Id. ¶

20.)  Eventually, Darby and Parenta followed Plaintiff to a Dunkin Donuts and spoke with him

about his whereabouts on the night of November 22, 2004.  (Id. ¶ 19.)  Plaintiff denied all

allegations.  (Id. ¶ 24.)  He specifically denied any involvement in the night club incident and

denied possessing an NHPD badge or identification.  (Id. ¶ 24-25.)  Following the conversation,

Ferrante closed the investigation and Plaintiff never again heard from Parenta or Darby.  (Id. ¶

25-26.)

    On December 9, 2004, Paul Faugno, Esq., counsel to Plaintiff, wrote a letter to the Mayor

of North Haledon advising him that the investigation into the China Club incident amounted to

harassment.  (Pl. SOF ¶ 13.)  Then, on December 10, 2004, the Mayor of Harrington Park, Paul

Hoeschler, received an anonymous letter containing disparaging information regarding Plaintiff.

(Pl. SOF ¶ 12D.)  David J. Moppert, Chief of the HPPD, decided to conduct an investigation into

Van. (Id. ¶ 12E.) At the onset of the investigation, Van determined that he was obligated to disclose to Moppert details concerning the NHPD investigation into the China Club incident. (Id.) He therefore disclosed the facts of the investigation as well the facts of his prior employment with the NHPD. Upon finishing his investigation, Chief Moppert ultimately concluded that Plaintiff did not possess a North Haledon badge and had not used it to avoid arrest outside of the China Club. (Centrello SOF ¶ 31.)

On May 3, 2005, however, the HPPD terminated Plaintiff. (NHPD SOF ¶ 39.) Moppert testified that Plaintiff's termination was the result of several factors: (1) he was a probationary officer; (2) the HPPD had received an anonymous letter related to Plaintiff's previous employment with North Haledon and his voluntary resignation from that position; (3) Plaintiff refused to see a doctor after he was injured in January 2005; and (4) the China Club incident. (Centrello SOF ¶ 34.) Moppert testified that even without the anonymous letter or the China Club incident, Plaintiff's refusal to see a doctor or schedule surgery for his injury would have led to his termination. (Id. ¶ 36.) When Plaintiff was terminated, he was still within his one-year probationary period. (Id. ¶ 33.) Upon termination from the HPPD, Plaintiff obtained full-time employment at Market Street Surgical Center and subsequently took a job with his current employer, Saddle River Surgical Center. (Id. ¶ 38.) Plaintiff never served upon Centrello a notice of claim pursuant to N.J.S.A. 59:8-8, nor did Plaintiff seek leave of Court to filed a notice of claim within one year of the claim's accrual. (Id. ¶ 41.)

On June 19, 2007, Plaintiff took Centrello's deposition. Only at that point, and at no time before, did Centrello disclose the alleged source of the China Club incident to be James Lanari. (Pl. SOF ¶ 18.) Centrello testified that Lanari did not want his name disclosed because Lanari

had failed to properly arrest someone and because he lived in New Jersey but worked in New York City, both issues for which he could face disciplinary action.  (Id. ¶ 19.)

Lanari, however, testified differently.  (See generally Pl. SOF ¶¶ 20A-N.)  He claims to have lived in Nanuet, New York, at the time of the November 24, 2004 incident.  (Id. ¶ 20A.)  At that time he was employed by the New York City Middle North Precinct.  (Id. ¶ 20B.)  He claims to know no one from the NHPD nor does he know where Horth Haledon is located.  (Id. ¶ 20C.) He knows Centrello because Centrello is a member at the gym where he works out.  (Id. ¶ 20E.) Lanari says that he had a conversation with Centrello in November 2004 but that the name "Mark Van" never came up and that Lanari never mentioned having any information regarding a China Club incident.  (Id. ¶ 20F.)  Moreover, Lanari testified that no one had ever shown him a badge with the name "Mark Van" nor had he ever had an encounter with any such person outside the China Club.  (Id. ¶ 20G.)  Finally, Lanari testified that he never told Centrello about any China Club incident, never told him to contact the NHPD about any issue, and never himself called the Borough of North Haledon.  (Id. ¶¶ 20 H-L.)

## II.    **Procedural History**

On November 28, 2005, Plaintiff filed a Complaint initiating the present action.  He filed suit against Defendants NHPD, Ferrante, Darby, and Parenta.  Then, on June 6, 2008, Plaintiff filed an Amended Complaint in which he added Defendants Rowe, Centrello and the DPD.  The twelve-count amended complaint alleges that defendants have deprived plaintiff of his Fourteenth Amendment constitutional rights as well as rights conferred by the law of the state of New Jersey.

The twelve counts are summarized as follows: (1) Counts I, II, VIII, and XII are federal

and state constitutional actions alleging a violation of Plaintiff's due process rights; (2) Counts III

and IX allege common law defamation and civil conspiracy;[3] (4) Counts IV, V, and X allege

negligent and intentional infliction of emotional distress; (5) Count VI alleges breach of contract

against the Borough of North Haledon and Joseph Ferrante; and (6) Counts VII and XI allege

tortious interference with business relationships.[4]  Van concedes in the briefing that he will not

be proceeding on Counts IV, V, and X regarding intentional and negligent infliction of emotional

distress.  Thus, the Court evaluates the remaining claims as applied to all Defendants (except the

DPD).

## III.    Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine issue of material fact compels a

trial.  Id. at 324.   In so presenting, the non-moving party must offer specific facts that establish a

---

[3] On December 5, 2008, this Court granted Defendant Rowe's motion to dismiss the defamation and slander counts against him for failure to adhere to the one-year statute of limitations.  Thus, these Counts do not apply to Rowe.

[4] Though the Amended Complaint contains twelve counts, Plaintiff has conceded that many of the counts are duplicative.  Thus, Count 11 is duplicative of Count 7, Count 10 is the same as Count 4, Count 9 the same as Count 3, and Count 8 the same as Count 2.  (Docket Entry # 46-6 ("Dec. of Counsel"), Ex. U.)

genuine issue of material fact, not just "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the

non-moving party may not rest upon the mere allegations or denials in its pleadings.  See

Celotex, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions,

bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v.

N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts

and their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## IV.    Discussion

First, the Court examines the federal and state constitutional claims raised by Plaintiff

against all Defendants.  Then the Court addresses each individual summary judgment motion as

it applies to the various state law claims asserted.

### A.        Constitutional Claims

Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 alleging a violation of his due

process rights under the Fourteenth Amendment to the United States Constitution.  Section 1983

provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To recover under § 1983, a plaintiff must show two elements: (1) the

defendants acted under color of state law, and (2) their actions deprived the plaintiff of a right

secured by the Constitution or federal statutes. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). The Court first analyzes the latter element of the § 1983 claim – whether or not Plaintiff can survive summary judgment as to the alleged deprivation of his Fourteenth Amendment rights.

The due process clause of the Fourteenth Amendment protects an individual from arbitrary government action. Country of Sacramento v. Lewis, 523 U.S. 833, 845, 118 S. Ct. 1708, 1716, 140 L. Ed. 2d 1043, 1057 (1998). Plaintiff alleges a violation of both his substantive and procedural due process rights. Substantive due process is the deprivation of a protected interest involving an abuse of official power which "shocks the conscience." United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 399 (3d Cir. 2003). Thus, Plaintiff must (1) allege and substantiate a property interest protected by due process, and (2) prove that the government's deprivation of that property interest shocks the conscience. Cherry Hill Towers, L.L.C. v. Township of Cherry Hill, 407 F. Supp. 2d 648, 654 (D.N.J. 2006). Procedural due process involves notice and the right to be heard before any significant deprivation of a protected property right. Abott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998) (internal citations omitted). To state a procedural due process claim, Plaintiff must allege (1) the deprivation of an interest encompassed within the Fourteenth Amendment's protection of life, liberty or property, and (2) that the procedures attendant to that deprivation failed to provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Thus, in both the substantive and procedural due process analysis, a plaintiff's claim does not survive unless it adequately demonstrates the deprivation of a liberty or property interest secured by due process.

In this case, Plaintiff arguably alleges four separate liberty or property interests. First,

9

and most importantly, Plaintiff argues that Defendants deprived him of the right to pursue the occupation of his choice. The right to "follow a chosen profession free from unreasonable government interference comes within both the liberty and property concepts of the Fifth and Fourteenth Amendments." Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994). In fact, "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Truax v. Raich, 239 U.S. 33, 41, 36 S. Ct. 7, 60 L. Ed. 131 (1915). However, actions that deprive an individual of a specific job are not actionable under the due process clause. Rather, "[i]t is the liberty to pursue a particular calling or occupation and not the right to a specific job that is protected by the Fourteenth Amendment." Piecknick, 36 F.3d at 1262.

With respect to Ferrante, Darby, Rowe, and Parenta, the facts set forth in this case allege nothing more than a set of police officers following up on a tip received from another police officer. Specifically, Centrello contacted Rowe, who contacted Parenta, regarding the allegations that a man named "Mark Van" had improperly used his police badge to extricate himself from an altercation and potential arrest outside of the China Club in New York City. Parenta and Rowe then communicated the information to Chief Ferrante, and Parenta himself called Centrello to verify the accuracy of the story. Finally, Chief Ferrante dispatched two officers – Darby and Parenta – to follow up on the allegation. Darby and Parenta confronted Plaintiff in the parking lot of the HPPD, where Plaintiff worked as a probation officer, and eventually asked Plaintiff about the allegations. After Plaintiff categorically denied them, no further action was taken. Plaintiff was never arrested or charged with any crime. Sometime later, Plaintiff was terminated

10

from his job at the HPPD.

With respect to Centrello, the facts are clear and undisputed that he was the source of the China Club allegation with respect to the NHPD Defendants.  There is certainly a question of fact as to whether or not he actually received this information from Lanari, or whether he fabricated the story.  Lanari, after all, denies all mention of anything to do with Plaintiff Mark Van and tells a completely different story from that of Centrello.  However, at the end of the day, neither set of facts sets up Plaintiff's claim that the Defendants' actions prevented him from pursuing his career as a police officer.

Here, Plaintiff argues that since his "termination as a police officer, he has not been employed [as] a police officer..."  (Pl. Opp. Br. 9.)  The undisputed facts show that Plaintiff has been employed since 2005 at Saddle River Surgical Center.  Plaintiff does not, however, allege or submit any factual proof in support of his general claim that Defendants' conduct in any way prevented his future employment as a police officer.  He does not allege or offer any facts in support of a theory that future police officer positions were denied him on account of the alleged lies spread by the Defendants in this case.  Rather, the record only reflects that he took a different non-law enforcement position upon termination from the HPPD.  On these facts, Plaintiff cannot sustain a claim for deprivation of the right to practice the general occupation of his choice.

Next, Plaintiff alleges damage to his reputation in violation of the Fourteenth Amendment.[5]  Reputation alone is not a protected liberty interest under the Fourteenth Amendment.  Paul v. Davis, 424 U.S. 693, 708-09, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

---

[5] Plaintiff's Amended Complaint contains reference to allegations of reputational damage.  However, Plaintiff did not address this particular allegation in either of his opposition briefs.  In the interest of completeness, however, the Court chooses to analyze it.

Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest, referred to as the stigma-plus test. Paul, 424 U.S. at 701. In this case, Plaintiff fails to allege and prove the deprivation of an additional right. Importantly, Plaintiff also fails to articulate the procedural due process that was lacking in this case. Rather than asserting a constitutional violation, Plaintiff's claims with respect to the damage to his reputation stem from comments allegedly made by Defendants in this matter and are therefore more properly alleged as state-law defamation claims. See, e.g., Siegert v. Gilley, 500 U.S. 226, 233, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.") Thus, to the extent that Plaintiff asserts a procedural due process claim from the loss of a liberty interest in his reputation, that claim is dismissed.

Next, Plaintiff appears to allege a Section 1983 conspiracy claim. Conspiracy, however, is not actionable under § 1983. Rather, "[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights.... the essence of a § 1983 claim is the deprivation of the right rather than the conspiracy." Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990) (citations omitted). The Court having already found that Plaintiff has not demonstrated the deprivation of a constitutional right, his claim for conspiracy under Section 1983 must also fail. To the extent that Plaintiff asserts a state law civil conspiracy claim, the Court will address it separately.

Finally, the Court notes that Plaintiff cannot allege or substantiate a claim based on any property interest in his continued employment with the HPPD. Any such allegation is barred by

the fact that he was on probation at the time of his termination. He, therefore, lacked a property interest in continued employment at the HPPD. <u>See, e.g.</u>, <u>Machesky v. Hawfield</u>, No. 07-9, 2008 WL 614819 at *5 (W.D. Pa. March 4, 2008) (no property interest where employee was on probationary status).

The New Jersey Supreme Court "has chosen to apply the same standards developed by the United States Supreme Court under the federal Constitution for resolving due process claims under the New Jersey Constitution." <u>State Farm Mut. Auto. Ins. Co. v. State of New Jersey</u>, 124 N.J. 32, 46-47, 590 A.2d 191 (N.J. 1991). Plaintiff alleges no claim specific to the New Jersey Constitution, instead choosing only to argue the due process violation with respect to the deprivation of his right to pursue a career as a police officer. Thus, for the same reasons articulated above, his state constitutional claims – to the extent they are asserted – must fail. Counts I, II, VIII, and XII are accordingly dismissed.

### B.    NHPD Defendants Motion for Summary Judgment

#### 1.    Qualified Immunity

Ferrante, Darby, Rowe, and Parenta contend that they are entitled to qualified immunity with respect to Plaintiff's federal claims. Qualified immunity shields state officials performing discretionary functions from suit for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 296 (1982)). Qualified immunity is not simply a defense to liability; it is "an entitlement not to stand trial or face the other burdens of

litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

A qualified immunity analysis involves a two-step process. First, the court must ask whether "the facts alleged, [when] viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts, as alleged, demonstrate a constitutional violation, then the Court must ask whether the right asserted was "clearly established." Saucier, 533 U.S. at 201. Pursuant to the Supreme Court's recent decision in Pearson, courts are free to analyze the Saucier steps in any order. Pearson v. Callahan, – U.S. ----, 129 S. Ct. However, "where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). Only upon carrying this initial burden must the defendant then demonstrate "that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." Id.

As indicated earlier, Plaintiff has failed to carry his burden. Specifically, he fails to substantiate a constitutional claim implicating a property or liberty interest protected by the Fourteenth Amendment. However, assuming that he had alleged and supported a violation sufficient to satisfy the first element in the qualified immunity inquiry, the Court finds that Ferrante, Darby, Rowe, and Parenta acted reasonably and did not violate any clearly established right. They received a police tip and acted upon it, eventually closing the investigation upon finding there to have been no violation. Plaintiff offers no facts or argument to rebut this version of events. Thus, even if a constitutional violation had been alleged, the Court would grant

qualified immunity based on the second prong of the qualified immunity inquiry.

**2.    North Haledon Police Department**

In New Jersey, a municipal police department is an "executive and enforcement function of municipal government."  N.J.S.A. 40A:14-118.  Thus, it is not considered a separate judicial entity and is not amenable to suit in a Section 1983 action.  Padilla v. Twp. of Cherry Hill, 110 Fed. Appx. 272, 278 (3d Cir. 2004).  Under Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a plaintiff may only assert a Section 1983 claim against a municipality if a policy, custom, regulation, or decision adopted by the municipality caused a constitutional violation.

Plaintiff alleges no such policy, custom, regulation, or decision that could support a § 1983 claim.  Rather, Plaintiff appears to want to hold the NHPD (and thus the municipality) liable for the actions its employees – Ferrante, Darby, Rowe, and Parenta.  However, "[a] municipality cannot be responsible for damages under section 1983 on a vicarious liability theory."  Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004); see also Leatherman v. Tarrant County, 507 U.S. 163, 166, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) ("[A]" municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").  Thus, even if Plaintiff had satisfactorily alleged a constitutional violation, the federal claims against the NHPD would be dismissed from this action with prejudice because it is not a judicial entity amenable to suit.  Assuming *arguendo* that Plaintiff had correctly named the municipality or that the NHPD stands in the shoes of the municipality, the constitutional claims against it would be dismissed because Plaintiff fails to allege an unconstitutional custom or policy and because municipalities cannot be held vicariously liable for actions of their employees.

15

### **3.**    **Tort Claims Act**

The New Jersey Tort Claims Act ("TCA"), <u>N.J.S.A.</u> § 59:1-1 <u>et seq.</u>, renders a public

employee immune from suit "if he acts in good faith in the execution or enforcement of any law."

<u>N.J.S.A.</u> § 59:3-3.  The "objective reasonableness" standard used to determine whether a

defendant is entitled to qualified immunity in Section 1983 actions is used to determine good

faith under <u>N.J.S.A.</u> 59:3-3.  <u>Hill v. Algor</u>, 85 F. Supp. 2d 391, 411 (D.N.J. 2000).  The TCA

does not, however, confer immunity upon a public employee "if it is established that his conduct

was outside the scope of his employment or constituted a crime, actual fraud, actual malice or

willful misconduct."[6]  <u>N.J.S.A.</u> § 59:3-14.   Willful misconduct is "the commission of a

forbidden act with actual (not imputed) knowledge that the act is forbidden .... [I]t requires much

more than an absence of good faith and much more than negligence."  <u>PBA Local No. 38 v.

Woodbridge Police Dept.</u>, 832 F. Supp. 808, 830 (D.N.J. 1993) (quotation omitted).  Finally, "[a]

public entity is not liable for an injury resulting from an act or omission of a public employee

where the public employee is not liable."  <u>N.J.S.A.</u> § 59:2-2(b).

The NHPD Defendants ask the Court to dismiss the state common law claims against

them pursuant to the good faith immunity provision of the TCA.  The common law claims

alleged include: (1) tortious interference with economic advantage; (2) defamation; (3) breach of

contract; and (4) civil conspiracy.[7]  The New Jersey Supreme Court, however, recently affirmed a

ruling finding that defamation claims, by definition, cannot be dismissed pursuant to the TCA's

---

[6] There is also an exception to good faith immunity for false arrest or false imprisonment
charges, neither of which are alleged by Plaintiff in the present matter.

[7] As indicated earlier, Plaintiff concedes Defendants' arguments regarding his negligent
and intentional infliction of emotion distress claims.

good-faith immunity provision. <u>Leang v. Jersey City Bd. of Educ.</u>, 198 N.J. 557, 969 A.2d 1097, 1113-14 (N.J. 2009). This is because a defamation claim includes an element of "actual malice" that is mutually exclusive from the good faith standard required to obtain qualified immunity under the TCA. <u>Id.</u> at 1114. Thus, Plaintiff's defamation claim remains outside the purview of the TCA's good faith defense.

The same holds true for Plaintiff's tortious interference claim. To prove tortious interference with economic advantage, a plaintiff must show: (1) the plaintiff had a reasonable expectation of an economic benefit or advantage; (2) the defendant knew of Plaintiff's expectancy; (3) the defendant intentionally and maliciously interfered with this expectancy; (4) there was a reasonable probability that the plaintiff would have realized the economic benefit in the absence of interference; and (5) the plaintiff suffered injury as a result of the defendant's conduct. <u>Lightning Lube</u> <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1167 (3d Cir. 1991); <u>Coast Cities Truck Sales, Inc. v. Navistar Intern. Transp. Co.</u>, 912 F. Supp. 747, 771 (D.N.J. 1995). Like defamation, actual malice is an element of the cause of action, thereby putting it at odds with the good faith immunity provisions of the TCA. Accordingly, this Court refrains from applying the TCA to Plaintiff's tortious interference claim.

Finally, the civil conspiracy and breach of contract claims are likewise excepted from the TCA's good-faith immunity provision. Plaintiff alleges that Defendants conspired to fabricate and spread defamatory statements about him regarding the alleged incident outside the China Club. Thus, because the claim is premised upon malicious and intentional conduct, the good-faith immunity provision would not apply. Finally, breach of contract claims do not arise under the Tort Claims Act, and thus Defendants cannot use its good-faith immunity provision to escape

17

liability for a contract claim.  Having found the TCA to be inapplicable to the present claims, the

Court moves to a discussion of each state law claim.

### 4.  Defamation

To state a claim for defamation under New Jersey law, a plaintiff must show (1) the

assertion of a false and defamatory statement concerning another; (2) the unprivileged

communication of that statement to a third party; (3) fault amounting to at least negligence by the

publisher.  DeAngelis v. Hill, 180 N.J. 1, 13, 847 A.2d 1261 (2004).  To determine whether or

not a statement has a defamatory meaning, a court examines three factors: (1) the content; (2) the

verifiability; and (3) the context.  Id. at 14.

In the case at hand, Plaintiff makes no allegation of defamation against either Darby or

Parenta.  Moreover, his defamation allegation against Rowe was dismissed on December 5, 2008

because he failed to abide by the one-year statute of limitations.  Thus, of the NHPD Defendants,

only the defamation claim against Ferrante remains.  As to Ferrante, Plaintiff alleges two

defamatory statements, both allegedly made by Ferrante to Chief Moppert of the HPPD.  (Pl.

Opp. Br. 11.)  In November 2004, Ferrante had a conversation with Moppert in which Ferrante

stated "that he had received a phone call from a friend of his in the New York City Police

Department who provided information that Mark Van had improperly utilized a North Haledon

police identification..."  (Id.)  He further stated "that we should meet sometime and he would me

[Moppert] about Mark Van."  (Id.)  Van's claim is that both of these statements violated the

November 3, 2000 agreement between Van and the Borough of North Haledon.  In that

agreement, the Borough of North Haledon agreed to limit inquiries by a future employer to the

following: "Patrolman Mark Van served as patrolman from April 28, 1999 to November 3, 2000

where he submitted his voluntary resignation effective November 3, 2000."

Regardless of the November 3, 2000 agreement, however, neither statement propounded by Plaintiff rises to the level of defamation. Examining the content of both statements reveals nothing false or defamatory. Plaintiff argues that "there exists genuine issues of material fact whether these statements by Chief Ferrante constituted defamatory statements..." (Pl. Opp. Br. 11-12.) However, Plaintiff fails to support this claim with any argument as to how either of the two statements implicates the three-part DeAngelis test for defamation. Thus, Plaintiff's claim for defamation fails, and Ferrante's motion for summary judgment is granted as to this Count.

### 5.    Breach of Contract and Tortious Interference

As indicated earlier, Plaintiff must satisfy five elements to prove tortious interference with economic advantage: (1) Plaintiff's reasonable expectation of an economic benefit or advantage; (2) Defendants' knowledge of Plaintiff's expectancy; (3) Defendants' intentional and malicious interference with this expectancy; (4) a reasonable probability that Plaintiff would have realized the economic benefit in the absence of interference; and (5) injury suffered as a result of Defendant's conduct. Lightning Lube Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1167 (3d Cir. 1991). Here, there is no issue of material fact as to whether any of the NHPD Defendants interfered with Plaintiff's reasonable expectation of economic advantage. The simple fact is that Plaintiff himself notified Chief Moppert of the China Club investigation and of his prior employment with the NHPD. None of the NHPD Defendants ever contacted or spoke to Moppert during the pendency of that investigation, and therefore Plaintiff cannot satisfy the third element of the analysis. The fact that an anonymous letter was sent to the Mayor of Harrington Park does not change this conclusion, because Plaintiff has offered no evidence linking that letter

to any of the NHPD Defendants.  In his opposition, Plaintiff simply asserts that "there is an issue of material fact as to whether these actions were done intentionally or with malice."  (Pl. Opp. Br. 12.)  This is insufficient to carry his burden on a motion for summary judgment. Additionally, Plaintiff fails to substantiate any claim of injury – the undisputed evidence shows that upon termination from the HPPD, he obtained new employment in a non-law enforcement position at a higher salary.

Finally, Plaintiff fails to offer any opposition or argument to the NHPD Defendants' motion for summary judgment as to his breach of contract claim.  And given the facts set forth by both parties, a grant of summary judgment is warranted.  The breach of contract claim is based on a resolution issued on November 3, 2000 concerning Van's voluntary resignation from the NHPD.  Paragraph (d) of that resolution reads as follows: "In the event of any inquiry by a future employer, the Borough response will be 'Patrolman Van served as a patrolman from April 28, 1999 to November 3, 2000 where he submitted his voluntary resignation effective November 3, 2000.'" (Opp. Br., Faugno Decl., Ex. 1 (Docket Entry # 60-4.)  In his Amended Complaint, Plaintiff alleges that "various negative information was disseminated regarding Mark Van which was in direct breach of the [November 3, 2000 Resolution]." (Am. Compl. at 15.)  However, Plaintiff never specifies the actual content of the negative information disseminated.  He does not indicate the nature of the content or the recipient of the information, and most importantly he fails to link any of it with the resolution in question.  There is simply no evidence indicating the dissemination of any negative content by the NHPD Defendants that would contravene or breach the November 3, 2000 Resolution.

To recap, the facts do not indicate that any prospective employer ever attempted to

contact the NHPD regarding Van's previous employment.  Nor do the facts indicate that anyone

at the NHPD ever disseminated any negative information to a future employer.  Given the lack of

opposition filed by Plaintiff as well as the clear factual record, the Court grants summary

judgment on this Count.

### 6.    Civil Conspiracy

Count 3 alleges a claim for common law civil conspiracy.  In New Jersey, civil

conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act,

or to commit a lawful act by unlawful means, the principal element of which is an agreement

between the parties to inflict a wrong against or injury upon another, and an overt act that results

in damage."  Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super 337, 364, 633

A.2d 985 (App. Div. 1993).  Therefore, Plaintiff is required to prove four elements to prevail on

such a claim – (1) a combination of two or more persons; (2) a real agreement or confederation

with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful

means; and (4) special damages.  Farris v. County of Camden, 61 F. Supp. 2d 307, 330 (D.N.J.

1999).  Plaintiff fails to set forth any facts showing the existence of an agreement between the

Defendants.  Rather, Plaintiff simply relies upon unsupported allegations to make his case.

Though specific allegations would suffice to prevail on a motion to dismiss, the motion before

the Court is one for summary judgment and it requires Plaintiff to put forth specific evidence

sufficient to create an issue of material fact.  Without more, the Court must grant Defendants'

motion for summary judgment on this Count.

### 7.    Conclusion

For the reasons set forth above, NHPD Defendants' motion for summary judgment is

granted and all claims against them are dismissed.

### C.    Centrello's Motion for Summary Judgment

The Court has already dismissed the federal and state constitutional claims alleged against Centrello for Plaintiff's failure to substantiate a proper due process violation.  Thus, the Court moves directly to an analysis of Centrello's summary judgment motion as it applies to the remaining state law claims.

### 1.    Tort Claims Act

First, Centrello argues that Plaintiff's claims are barred for failure to follow the notice procedures outlined by the TCA.  Specifically, the TCA provides as follows: "[n]o action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8–3.  Prior to filing a complaint, a plaintiff is obligated to submit a notice of claim to the public entity within ninety days of the claim's accrual.  N.J.S.A. 59:8-8.  The notice of claim must include: (a) the name and post office address of the claimant; (b) the post office address to which the person presenting the claim desires notices to be sent; (c) the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted; (d) a general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; (e) the name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and (f) the amount claimed as of the date of presentation of the claim, including an estimate of any prospective injury or damage and the basis of computation of the amount claimed.  N.J.S.A. 59:8-4.  If a plaintiff fails to file a notice of claim within the 90-day time limit, he or she can apply to the Superior Court for permission to

22

file the notice of claim within one year of the claim's accrual.  N.J.S.A. 59:8-9.  Permission to

file this late notice of claim shall be given for "extraordinary circumstances."  Id.

In Velez v. City of Jersey City, 180 N.J. 284, 291, 850 A.2d 1238, 1242-43 (2004), the

New Jersey Supreme Court took on the question of whether the notice requirement applied to

intentional conduct.  Velez, 180 N.J. at 292.  Thus, the Court sought to decide a split between

lower courts as to whether the provisions of N.J.S.A. 59:3-14, withdrawing immunity for a

public employee who engaged in conduct that constituted "a crime, actual fraud, actual malic, or

willful misconduct" also overrode the TCA's mandatory notice provision.  After parsing through

the legislative history of the statute, the prior caselaw, and the text of the TCA, the New Jersey

Supreme Court ruled that the TCA's notice requirements were not intended to apply solely to

actions for negligence, but rather apply equally to intentional torts.  Id. at 294-96.  However,

finding that the decision had created a new rule of law, the Court gave its decision prospective

application.  Id. at 297.  Following Velez, therefore, a plaintiff is required to provide a notice of

claim to the relevant public entity for all tort claims – including intentional torts – against public

entities and public employees that accrue after June 29, 2004.

Finally, the failure to file a timely notice of claim – especially if one year has passed since

the claim's accrual – generally mandates dismissal of the suit.  "To bring an action in tort against

a 'public entity or public employee' in New Jersey, the claimant must file a notice of claim with

the entity within ninety days of the accrual of the claim or else be 'forever barred' from asserting

that cause of action."  County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 174 (3d Cir.

2006) (citations omitted).  However, two general exceptions apply.  First, the notice of claim

requirement does not apply to (1) statutory causes of action that contain specific procedural

requirements and greater damage allowances than available at common law, Velez, 180 N.J. at 296; Fuchilla v. Layman, 109 N.J. 319, 332-38, 537 A.2d 652 (1988); and (2) claims that assert state or federal constitutional rights, Velez, 180 N.J. at 296; Greenway Dev. Co. v. Borough of Paramus, 163 N.J. 546, 557-58, 750 A.2d 764 (2000).

In this case, it is undisputed that Plaintiff never filed a notice of claim.  Plaintiff incorrectly argues that the notice provisions do not apply here because the claims implicate intentional, outrageous, malicious, or willful misconduct.  (Pl. Opp. Br. 6.)  Pursuant to Velez, however, the TCA notice provisions apply both to negligent and intentional conduct, including actions allegedly outside the scope of employment.  See also Lassoff v. New Jersey, 414 F. Supp. 2d 483, 490 n.19 (D.N.J. 2006).  Because the present claims accrued after June 29, 2004, the Velez decision applies.  Thus, Plaintiff had the obligation and duty under the TCA to file a notice of claim as to all intentional and non-intentional state law claims.  He failed to do so.  The Court accordingly dismisses Plaintiff's state law claims against Centrello for failure to adhere to the TCA's mandatory notice requirements.

## 2.    Statute of Limitations

Even if the claims against Centrello were not barred by the notice provisions of the TCA, Plaintiff's action for defamation would be barred by the one-year statute of limitations.  On December 5, 2008, this Court dismissed the defamation count against Defendant Rowe because Plaintiff conceded that he had not filed it in time.  Specifically, he conceded that he learned of Centrello's identity and involvement in the present matter in November 2006.  At that point, the cause of action for defamation accrued.  However, Plaintiff did not file his Amended Complaint adding Centrello as a defendant until June 6, 2008.  Actions for defamation are subject to a one-

year statute of limitations in New Jersey.  N.J.S.A. 2A:14-3.  Plaintiff's Amended Complaint clearly fell outside of the one-year statute of limitations with respect to his claim for defamation, and that allegation is therefore time-barred.

### 3. Civil Conspiracy

Assuming *arguendo* that Centrello's civil conspiracy allegation was not barred by his failure to file a notice of claim, it would still fail on the merits for failure to substantiate an actual meeting or agreement between Centrello and any of the other Defendants.  See Section IV.B.6, supra.

## V. Conclusion

The Court grants the motions for summary judgment on all counts as to all Defendants. The federal and state constitutional claims are dismissed for failure to substantiate an actual constitutional deprivation.  Additionally, the NHPD individual Defendants would receive qualified immunity as to those claims, and the NHPD itself is not subject to damages on a vicarious liability theory.  The state law claims are dismissed both on the merits (as against the NHPD Defendants) and for failure to file a notice of claim in accordance with the New Jersey Tort Claims Act (as against Centrello).  Finally, because the Court dismisses all counts, Centrello's additional motion to dismiss as to punitive damages is rendered moot.

An appropriate Order accompanies this Opinion.


Dated: June 17, 2009                                    /s/ Jose L. Linares
                                                        United States District Judge